13  CV  2443

LIPSIUS-BENHAIM LAW, LLP
Attorneys for Plaintiff
80-02 Kew Gardens Road, Suite 1030
Kew Gardens, New York 11415 212-
981-8440

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
KOLEL BETH YECHIEL MECHIL OF TARTIKOV, INC.,                    Docket No.

                                         Plaintiff,

            –against–

JOHN HANCOCK LIFE INSURANCE COMPANY,

                                         Defendant.
------------------------------------------------------------------X

## DECLARATION OF IRA S. LIPSIUS
## IN SUPPORT OF ORDER TO SHOW CAUSE

**IRA S. LIPSIUS** declares under penalty of perjury as follows:

1.      I am a partner at the law firm of Lipsius-BenHaim Law, LLP, attorneys for

plaintiff Kolel Beth Yechiel Mechil of Tartikov, Inc. ("Kolel"). I submit this Declaration in

support of Kolel's instant application for an Order to Show Cause.

2.      Annexed hereto as **Exhibit A** is a true and correct copy of life insurance policy

number 1418846 issued by defendant John Hancock Life Insurance Company ("John Hancock")

insuring the life of Edith Goldstein for the amount of $10,000,000.00 (the "Goldstein JH

Policy").

3.      The Goldstein JH Policy is one of forty-three (43) life insurance policies awarded

to Kolel in the "First Preliminary Decision, Ruling and Award of the Rabbinical Court," dated

April 10, 2012, a true and correct copy of which is annexed hereto as **Exhibit B**.

4.     Wilmington Savings Fund Society FSB is currently holding the Goldstein JH Policy as securities intermediary for Kolel.

5.     Plaintiff filed a claim, dated February 12, 2013, with John Hancock for the death benefits under the Goldstein JH Policy ("Goldstein JH Claim"). A true and correct copy of the Goldstein JH Claim is annexed hereto as **Exhibit C**.

6.     Annexed hereto as **Exhibit D** is a true and correct copy of a letter dated January 14, 2013 from Brian D. Graifman, Esq. to John Hancock, demanding that John Hancock "refrain from paying any death benefits" under the Goldstein JH Policy.

7.     On or about March 18, 2013, Paul Gallagher, Esq., counsel for John Hancock, advised me that the Goldstein JH Claim submitted by Plaintiff herein was approved for payment, and that John Hancock was withholding payment of the claim due to Mr. Graifman's letter.

Dated: Kew Gardens, New York
     April 11, 2013

                                             IRA S. LIPSIUS

*John Hancock* Life Insurance Company

P.O. Box 111
John Hancock Place
Boston, Massachusetts 02117
(800)−777−1377

| | | |
|---|---|---|
| INSURED **EDITH GOLDSTEIN** | SUM INSURED AT ISSUE | **$10,000,000** |
| POLICY NUMBER **UL 1418846** | DATE OF ISSUE | **DECEMBER 1, 2005** |

PLAN Protection Universal Life

## INDIVIDUAL UNIVERSAL LIFE INSURANCE

The John Hancock Life Insurance Company ("the Company") agrees, subject to the conditions and provisions of this policy, to pay the Death Benefit to the Beneficiary upon the death of the Insured if such death occurs while the policy is in full force, and to provide the other benefits, rights, and privileges of the policy. The Death Benefit (see Section 5) will be payable on receipt at the Servicing Office of the Company of due proof of the Insured's death.

The policy, which includes the application and any Riders which are a part of the policy on delivery, is issued in consideration of the application and payment of the Minimum Initial Premium as shown in Section 1.

The Policy Specifications and the conditions and provisions on this and the following pages are part of the policy.

THE POLICY IS A LEGAL CONTRACT BETWEEN THE OWNER AND THE COMPANY. **READ YOUR POLICY CAREFULLY.**

Signed for the Company at Boston, Massachusetts:

President

Secretary

Flexible Premium Universal Life Insurance policy
Death Benefit payable at death of Insured
Not eligible for dividends
Benefits, premiums and the Premium Class are shown in Section 1.

**Right to Cancel–The Owner may surrender this policy by delivering or mailing it to the Company at its Servicing Office as shown on the back cover (or to the agent or agency office through which it was delivered) within 10 days after receipt by the Owner of the policy. Immediately on such delivery or mailing, the policy shall be deemed void from the beginning. Any premium received on this policy will be refunded within 10 days after timely surrender of the policy.**

02PROTUL

U0102ANY

**Policy Provisions**

**Section**

1. Policy Specifications
2. Table of Rates
3. Definitions
4. Sum Insured
5. Death Benefit
6. Payments
7. Guaranteed Death Benefit Feature
8. Grace Period
9. Account Value
10. Loans
11. Surrenders and Withdrawals
12. Basis of Computations
13. Annual Report to Owner
14. Reinstatement
15. Owner and Beneficiary
16. Interest on Proceeds
17. Claims of Creditors
18. Assignment
19. Incontestability
20. Misstatements
21. Suicide Exclusion
22. The Contract
23. Settlement Provisions

## 1. POLICY SPECIFICATIONS

| | | | |
|---|---|---|---|
| **Insured** | EDITH GOLDSTEIN | **Plan** | Protection Universal Life |
| **Issue Age** | 81 | **Policy Number** | UL 1418846 |
| **Sex** | Female | **Date of Issue** | December 1, 2005 |
| **Premium Class** | Preferred Nontobacco | | |
| **Owner, Beneficiary** | As designated in the application subject to Section 15 of the policy | | |
| **Age 100 Adjustment Date** | December 1, 2024 | | |

**Sum Insured**

| | |
|---|---|
| **Sum Insured at Issue** | $10,000,000 |
| **Minimum Sum Insured** | $100,000 |

**MINIMUM GUARANTEED INTEREST RATE: 3%\*\***

**Other Benefits and Specifications**
None elected

**PREMIUMS**

| | |
|---|---|
| **Planned Premium** | $488,302.03 per year for 19 years |
| **Target Premium** | $452,000.00 per year |
| **Minimum Initial Premium** | $76,198.50 |
| **5 Year Guaranteed Death Benefit Premium\*** | $25,399.50 per month |
| **Lapse Protection Monthly Premium[1]** | Changes each policy year in accordance with the Table of Lapse Protection Factors in Section 2. |
| **Billing Interval** | Annual |

[1]The Lapse Protection Monthly Premium (i) is the premium required to maintain the Lapse Protection Feature for a given month and (ii) changes each policy year in accordance with the Table of Lapse Protection Factors in Section 2

\*Unpaid charges will accumulate while the 5 Year Guaranteed Death Benefit is in effect and could result in the need for a lump sum payment to keep the policy in force.

\*\*Additional amounts are not guaranteed and may not be credited to the portion of the account value in excess of indebtedness. See Section 9. Interest above the minimum guaranteed interest rate shown above is not guaranteed and the company has the right to change the amount of additional interest credited to the policy and the amount of cost of insurance or other expense charges deducted under the policy, which may require more premium to be paid than was illustrated or the cash values may be less than those illustrated.

**Notice:**  The actual premiums paid will affect the Account Value, the duration of insurance coverage, and the amount of Death Benefit as described in Section 5. **Even if the Planned Premiums shown above are paid as scheduled, they may not be sufficient to continue the policy in force until the death of the Insured.** Unless one of the Guaranteed Minimum Death Benefit features is in effect, the policy will continue in force until the death of the Insured only if on each Grace Period Testing Date the policy's Surrender Value (as defined in Section 11) is at least equal to all due and unpaid Policy Charges.



3LP

U0302ANY

***THIS PAGE INTENTIONALLY LEFT BLANK***

## 1. POLICY SPECIFICATIONS, continued

### MAXIMUM POLICY CHARGES

**Deductions from Premium Payments**

Premium Charge   10% of Premium Paid in all years.

**Monthly Deductions from Account Value**

Administrative Charge   $11.00 for Policy Year 1, $11.00 for Policy Years 2 and after.

Issue Charge   Percentage of Target Premium at Issue as shown below (percentage shown is deducted monthly):

| Policy Year 1 – 5 | 1.400% |
|---|---|
| Policy Year 6 – 20 | 1.400% |
| Policy Year 21 – 30 | 1.400% |

Cost of Insurance Charge   Determined in accordance with Section 9, and deducted for all Policy Years

Rider Charges   As hereinafter described in this Section 1 and in the applicable Table of Rates in Section 2

Surrender Charge   Per $1,000 of Sum Insured at Issue shown on page 3 and deducted upon Surrender in accordance with Section 11 as shown below:



| Policy Year 1 | $50.00 | Policy Year 12 | $24.15 |
|---|---|---|---|
| Policy Year 2 | $47.11 | Policy Year 13 | $22.12 |
| Policy Year 3 | $44.32 | Policy Year 14 | $19.99 |
| Policy Year 4 | $41.66 | Policy Year 15 | $17.73 |
| Policy Year 5 | $39.13 | Policy Year 16 | $15.31 |
| Policy Year 6 | $36.72 | Policy Year 17 | $12.74 |
| Policy Year 7 | $34.44 | Policy Year 18 | $10.12 |
| Policy Year 8 | $32.26 | Policy Year 19 | $7.58 |
| Policy Year 9 | $30.16 | Policy Year 20 | $0.00 |
| Policy Year 10 | $28.14 | Policy Year 21 and after | $0.00 |
| Policy Year 11 | $26.14 | | |

Withdrawal Charge   $50.00 per withdrawal. (See Section 11)

U3B02A

***THIS PAGE INTENTIONALLY LEFT BLANK***

## 2. TABLE OF RATES

### A. RATE TABLE

| Age[1] | Maximum Monthly Rates per $1,000 of Net Amount at Risk[2] | Death Benefit Factor |
|---|---|---|
| 81 | 6.275 | 1.2963 |
| 82 | 7.067 | 1.2735 |
| 83 | 7.988 | 1.2522 |
| 84 | 9.020 | 1.2324 |
| 85 | 10.164 | 1.2141 |
| 86 | 11.403 | 1.1971 |
| 87 | 12.749 | 1.1814 |
| 88 | 14.191 | 1.1668 |
| 89 | 15.755 | 1.1530 |
| 90 | 17.446 | 1.1399 |
| 91 | 19.305 | 1.1273 |
| 92 | 21.396 | 1.1149 |
| 93 | 23.840 | 1.1025 |
| 94 | 26.926 | 1.0897 |
| 95 | 31.310 | 1.0764 |
| 96 | 38.504 | 1.0624 |
| 97 | 52.275 | 1.0480 |
| 98 | 83.333 | 1.0335 |
| 99 | 83.333 | 1.0198 |
| 100+ | 0.000 | 1.0000 |

[1]. As defined in Section 3.

[2]. Maximum Monthly Rates and Minimum Values are based on the 1980 Commissioners Standard Ordinary Sex-distinct, Smoker-distinct Mortality Table. We have the right to change the Monthly Rates per $1,000 of Net Amount at Risk imposed, never to exceed the maximums shown above. Such changes may require additional premium payments other than those illustrated and may result in Account Values being less than those illustrated.

4

U0402ANY

***THIS PAGE INTENTIONALLY LEFT BLANK***

## 2. TABLE OF RATES, continued

### B. TABLE OF LAPSE PROTECTION FACTORS
### TO DETERMINE LAPSE PROTECTION MEASURE

| (a)<br>Policy<br>Year | (b)<br>Lapse<br>Protection<br>Monthly Rate[2] | (c)<br>Lapse Protection<br>Premium Factor[2] | (d)<br>Lapse Protection<br>Excess Premium<br>Factor[2] | (e)<br>Lapse Protection<br>Premium<br>Multiplier[2] | (f)<br>Lapse Protection<br>Monthly Accumulation<br>Factor |
|---|---|---|---|---|---|
| 1  | 2.5391  | 18.00% | 17.84% | 4.0 | 0.690479% |
| 2  | 2.5391  | 18.00% | 45.00% | 3.0 | 0.715571% |
| 3  | 2.2636  | 18.00% | 44.00% | 2.0 | 0.744572% |
| 4  | 2.5427  | 18.00% | 43.00% | 2.0 | 0.776838% |
| 5  | 2.8486  | 18.00% | 42.00% | 2.0 | 0.812350% |
| 6  | 3.1755  | 18.00% | 42.00% | 2.0 | 0.850487% |
| 7  | 3.5254  | 18.00% | 42.00% | 2.0 | 0.891520% |
| 8  | 3.8945  | 18.00% | 42.00% | 2.0 | 0.935025% |
| 9  | 4.2882  | 18.00% | 42.00% | 2.0 | 0.981720% |
| 10 | 4.7063  | 18.00% | 42.00% | 2.0 | 1.031603% |
| 11 | 5.1568  | 18.00% | 42.00% | 2.0 | 1.085717% |
| 12 | 5.6526  | 18.00% | 42.00% | 2.0 | 1.145715% |
| 13 | 6.2173  | 18.00% | 42.00% | 2.0 | 1.214612% |
| 14 | 6.9085  | 18.00% | 42.00% | 2.0 | 1.299788% |
| 15 | 7.8499  | 18.00% | 42.00% | 2.0 | 1.417307% |
| 16 | 9.2967  | 18.00% | 42.00% | 2.0 | 1.601451% |
| 17 | 11.7543 | 18.00% | 42.00% | 2.0 | 1.924527% |
| 18 | 16.2340 | 18.00% | 42.00% | 2.0 | 2.550008% |
| 19 | 24.7573 | 18.00% | 42.00% | 2.0 | 3.896900% |
| 20 | 0.0000  | 0.00%  | 0.00%  | 0.0 | 0.000000% |



1. The Lapse Protection Monthly Premium is equal to (i) plus (ii) plus (iii); where (i) is equal to the applicable rate from column (b) multiplied by the Sum Insured divided by $1000 and (ii) is equal to the sum of all Rider Contributions to the Lapse Protection Monthly Premium (as described in Section 1), if any and (iii) is equal to $9.00.

2. The Lapse Protection Premium Reduction is equal to (i) plus (ii); where (i) is equal to the applicable factor in column (c) multiplied by that portion of any premium paid during the month that, when combined with other premiums paid in the Policy Year, is between the sum of the Lapse Protection Monthly Premiums for that Policy Year and that sum multiplied by the applicable factor from column (e) and (ii) is equal to the applicable factor in column (d) multiplied by that portion of any premium paid during the month that, when combined with other premiums paid in the Policy Year, is greater than the sum of the Lapse Protection Monthly Premiums for that Policy Year multiplied by the applicable factor from column (e).

U4B02A

***THIS PAGE INTENTIONALLY LEFT BLANK***

## 3. DEFINITIONS

The term **"Account Value"** is as defined in Section 9.

The term **"Age"** means, on any policy anniversary, the age of the person in question at his or her birthday nearest that date.

The term **"Age 100 Adjustment Date"** means the policy anniversary nearest the insured's 100th birthday and is shown in Section 1.

The term **"Annual Processing Date"** means every 12th Processing Date starting with the Processing Date next after the Date of Issue.

The term **"Grace Period Testing Date"** means a Processing Date on which we make the determination described in Section 8. We will determine how often a Grace Period Testing Date will occur, but it will occur no less frequently than every 3rd Processing Date.

The term **"in full force"** means that the policy has not lapsed in accordance with Section 8 or terminated in accordance with Section 11.

The term **"indebtedness"** means the unpaid balance of a policy loan, including any accrued and unpaid interest.

The term **"Minimum Initial Premium"** is the amount shown in Section 1.

The term **"Net Premium"** is as defined in Section 6.

The term **"Payment"** means, unless otherwise stated, payment at our Servicing Office.

The term **"Planned Premium"** means the amount the Owner intends to pay, as indicated on the application and shown in Section 1.

The term **"Policy Year"** means (a) or (b) below whichever is applicable:

    (a) The first Policy Year is the period beginning on the Date of Issue and ending on the Valuation Date immediately preceding the first Annual Processing Date;

    (b) Each subsequent Policy Year is the period beginning on an Annual Processing Date and ending on the Valuation Date immediately preceding the next Annual Processing Date.

The term **"Premium"** is as defined in Section 6.

The term **"Processing Date"** means the first day of a policy month. A policy month shall begin on the day in each calendar month that corresponds to the day of the calendar month on which the Date of Issue occurred. If the Date of Issue is the 29th, 30th, or 31st day of a calendar month, then for any calendar month that has fewer days, the first day of the policy month will be the last day of such calendar month. The Date of Issue is not a Processing Date.

The term **"Servicing Office"** means the Company's Office which administers this policy. As of the policy's Date of Issue, the address of the Servicing Office is as shown on the back cover of this policy. The address may be changed from time to time by us. We will send written notice of any such change to your last known address.

The term **"Target Premium"** is the amount shown in Section 1.

The term **"Valuation Date"** means any date on which we are open for business.

The term **"Valuation Period"** means the period of time from the beginning of the day following a Valuation Date to the end of the next following Valuation Date.

The terms **"we"** , **"us"** , and **"our"** refer only to the Company.

The term **"written notice"** means, unless otherwise stated, a written notice received at our Servicing Office or, if permitted by our administrative practices, an electronic mail message ("e-mail") received by us at the internet address specified by us for receipt of such messages.

The terms **"you"** and **"your"** refer only to the Owner of this policy.

5

U0502ANY

## 4. SUM INSURED

Sum Insured is equal to the Sum Insured at Issue shown in Section 1 until changed. After the first Policy Year and while the policy is in force and the Insured is alive, you may request a reduction in Sum Insured by written notice to us. We reserve the right to limit (a) the number of such reductions to once per Policy Year, (b) the effective date of such reductions to only on an Annual Processing Date and (c) the maximum and minimum amounts of such reductions. All requested reductions will be subject to our approval.

If there is a reduction in Sum Insured, a charge may be deducted from the Account Value. This charge will be equal to a proportionate part of the Surrender Charge that would have applied if the policy had been surrendered on the date the reduction in Sum Insured takes effect. The proportion will be equal to the amount of the reduction in Sum Insured divided by the amount of Sum Insured in effect before the reduction. Any Guaranteed Death Benefit Feature in effect on the date of the requested reduction may be adjusted to prospectively reflect the new Sum Insured. The Sum Insured generally cannot be reduced below the minimum as shown in Section 1. Any reduction in Sum Insured will be effective on the next Processing Date after our approval.

## 5. DEATH BENEFIT

The Death Benefit is payable if (i) the Insured dies prior to the Surrender Date while the policy is in full force and (ii) we receive due proof of death prior to the payment of the Surrender Value. The Death Benefit will equal the death benefit of the policy minus any indebtedness on the date of death. If there is no Guaranteed Death Benefit (as described in Section 7) in effect, we will also deduct any unpaid charges under Section 9. In addition, if the Insured dies during a grace period as described in Section 8, we will also deduct the amount of any unpaid default payment described in that section.

The death benefit of the policy is the greater of: (i) the Sum Insured; and (ii) the Account Value on the date of death times the applicable Death Benefit Factor shown in Section 2. The determination of the death benefit will be affected by withdrawals as described in Section 11.

**Death Benefit At and After the Age 100 Adjustment Date**

If this policy is in full force and has not been deemed to be in default (as described in Section 8) at the end of the Age 100 Adjustment Date, we will automatically discontinue deduction of the Section 9 charges from the Account Value. The death benefit of the policy will thereafter be equal to the greater of (a) the Sum Insured and (b) the Account Value. As stated previously, the Death Benefit will equal the death benefit of the policy minus any indebtedness on the date of death of the Insured. No premium payments will be accepted after the Age 100 Adjustment Date, except for payment of the Default Payment (as described in Section 8) required to cure a Policy Default (as described in Section 8) when such default occurred on or before the Age 100 Adjustment Date.

Loan repayments are permitted after age 100. Likewise, policy loans and partial surrenders are permitted after age 100.

**Note:** This policy may not qualify as life insurance after the Insured's 100th birthday, and may therefore be subject to adverse tax consequences. Please consult a tax advisor before choosing to continue the policy after age 100.

## 6. PAYMENTS

Payments under the policy shall be made only to us at our Servicing Office. If payments are not being made on an electronic basis, a premium reminder notice for Planned Premiums, as shown in the application for the policy, will be sent to you at the beginning of each payment interval.

When we receive a payment, we first deduct any amount specified as payment of accrued interest on loans then due under Section 10 and any amount specified as loan repayment. The remainder will constitute Premium. We then deduct the applicable Premium Charge. The remainder will constitute Net Premium.

If coverage under the policy takes effect in accordance with the provisions of the application, we will process any premium payment as of the end of the Valuation Period in which the payment is received at our Servicing Office, unless one of the following exceptions applies:

(i)     We will process a payment received prior to the Date of Issue as if received on the Date of Issue;

(ii)    We will process the portion of any premium payment for which we require evidence of the Insured's continued insurability on the first Valuation Date after we have received such evidence and found it satisfactory to us;

6

(iii)   If a payment equal to the Minimum Initial Premium is not received prior to the Date of Issue, a portion of each payment subsequently received will be processed as if received on the Date of Issue. The policy will not be in effect until the Minimum Initial Premium is received. Each such portion will be equal to the lesser of (i) the payment received and (ii) the Minimum Initial Premium minus all payments previously received. The remainder, if any, of each such payment will be processed as of the date of receipt;

(iv)   If our receipt of any premium payment (or portion thereof) would cause a problem for the policy to qualify as a "life insurance contract" under the Federal income tax laws, we will not process such payment or portion. However, in the case of certain other tax problems, we will process the payment or portion on the first Valuation Date after we have received written instructions satisfactory to us from you to process such payment or portion notwithstanding the existence of the tax problem. Premiums are payable in advance and a premium receipt will be furnished upon request.

Subject to our maximum limits, you may pay Premiums in excess of the Planned Premium while the policy is in full force. We may require evidence of insurability for any such excess premium.

We reserve the right to modify the Death Benefit Factors shown in Section 2, retroactively if necessary, to ensure or maintain qualification of this policy as a life insurance contract for Federal tax purposes, notwithstanding any other provisions of this policy to the contrary.

## 7.  GUARANTEED DEATH BENEFIT FEATURE

When in effect, the 5 Year Guaranteed Death Benefit Feature is a guarantee that the Sum Insured and any rider benefits of your policy will not terminate, regardless of Account Value.

To determine if the 5 year Guaranteed Death Benefit Feature is in effect, we will first determine the "5 Year Cumulative Premium Balance" at the beginning of each Grace Period Testing Date. The "5 Year Cumulative Premium Balance" is equal to the sum of all Premiums paid prior to a Grace Period Testing Date, less the sum of all withdrawals made prior to that date and less the policy indebtedness as of that date. Next, we will determine the applicable "5 Year Guaranteed Death Benefit Premium Target", which is equal to the 5 Year Guaranteed Death Benefit Premium shown in Section 1 times the number of elapsed policy months from the Date of Issue to the Grace Period Testing Date in question. If the 5 Year Cumulative Premium Balance equals or exceeds the 5 Year Guraranteed Death Benefit Premium Target, the 5 Year Guaranteed Death Benefit Feature will be in effect from that Grace Period Testing Date to the next Grace Period Testing Date.

The amount shown in Section 1 for the 5 Year Guaranteed Death Benefit Premium may change in the event of any change in Sum Insured or any change in rider benefits.

If there are monthly charges that remain unpaid because of this feature, we will deduct such charges when there is sufficient Account Value to pay them.

## 8.  GRACE PERIOD

If, at the end of any Grace Period Testing Date, the 5 Year Guaranteed Death Benefit Feature is not in effect (as determined in accordance with Section 7) and the Surrender Value is less than the total of all unpaid Section 9 charges as of such Grace Period Testing Date, the policy will be deemed to be in default as of the end of such Grace Period Testing Date.

We will send notice to your last known address and to the last known address of any assignee of record with us at least 15 and not more than 45 days before the end of this grace period specifying that there is default and the minimum amount you must pay to cure the default ("Default Payment").

During the first 5 Policy Years, the Default Payment will be a payment which is equal to the lesser of (a) and (b) where:

(a)   equals the amount required to increase the 5 Year Cumulative Premium Balance described in Section 7 to an amount equal to the applicable 5 Year Guaranteed Death Benefit Premium Target, as determined in accordance with Section 7 plus three times the 5 Year Guaranteed Death Benefit Premium shown in Section 1 for the policy month in which the date of default occurred; and

(b)   equals the amount which after deduction of the Premium Charge is equal to (i) the amount, if any, by which the Surrender Value is less than zero on the date of default plus (ii) any and all Section 9 charges unpaid prior to the date of default plus (iii) three times the total of all Section 9 charges for the date of default.

During Policy Years 6 and thereafter, the Default Payment equals the amount which after deduction of the Premium Charge is equal to (i) the amount, if any, by which the Surrender Value is less than zero on the date of default plus (ii) any and all Section 9 charges unpaid prior to the date of default

plus (iii) three times the total of all Section 9 charges for the date of default.

U0702ANY

An amount at least equal to the Default Payment must be received within a grace period of 61 days after the date of default.

If a payment at least equal to the Default Payment is received before the end of the grace period, the policy will then no longer be in default. Any payment received will be processed as of the date of receipt at our Servicing Office. When payment is received, any Section 9 charges which are past due and unpaid will be deducted from the Account Value. If a payment at least equal to the Default Payment is not received by the end of the grace period, then the policy will lapse and will no longer be in full force. No Rider provisions will be in effect after the policy ceases to be in full force.

Upon lapse of the policy, the remaining Surrender Value, if any, will be paid to the Owner. If the Insured dies during the grace period, we will deduct from the proceeds all Section 9 charges due and unpaid on the date of the Insured's death.

## 9. ACCOUNT VALUE

On the Date of Issue, the Account Value will be equal to the Net Premium credited less an amount not to exceed one month's worth of Monthly Deductions from Account Value as shown in Section 1 and hereinafter described in this Section 9. The Account Value is then determined daily by accumulating with interest the Account Value for the prior day increased by Net Premiums credited and decreased by Withdrawals and, on a Processing Date, the Monthly Deductions from Account Value shown in Section 1 and hereinafter described in this Section 9.

### Interest

We will determine the rate or rates of interest to be credited to the Account Value. The rate or rates of interest will be based on our expectations of future investment earnings, persistency, mortality and expense experience, but in no event will the minimum credited interest rate be less than an effective annual guaranteed credited interest rate of 3%. The rate or rates of interest will be determined on a uniform basis for Insureds with the same timing and amount of premium, same amount of indebtedness and whose policies have been in force for the same length of time. Any additional interest will be credited to the Account Value no less frequently than annually. Additional interest is nonforfeitable after crediting. The credited interest rate will be determined prospectively and will be based on our future expectations of investment income, expenses, persistency and mortality experience. Beginning in Policy Year 11, if the credited rate of interest exceeds 3.49%, then such credited rate of interest will be increased by an amount equal to .50%.

We will determine a separate rate of interest to be credited to: (i) amounts of Account Value up to and including indebtedness; and (ii) amounts of Account Value in excess of indebtedness. The rate of interest credited to (i) will be no less than the current Loan Interest Rate for this policy less .75%.

### Monthly Deductions from Account Value

We will deduct from the Account Value on each applicable Processing Date, an amount not to exceed the Monthly Deductions from Account Value shown in Section 1 and as described below.

On the Date of Issue and on every Processing Date, we will deduct, in order, each of the charges (a) through (e) from the Account Value, where:

> (a) is the Issue Charge, if any;
>
> (b) is the Administrative Charge;
>
> (c) is the sum of the charges for Riders which are part of the policy, if any, provided such charges are deducted from the Account Value;
>
> (d) is the sum of all charges for ratings, if applicable; and
>
> (e) is the Cost of Insurance Charge.

### Cost of Insurance Charge

The Cost of Insurance Charge on the Date of Issue or on any Processing Date is the charge: (i) for the Net Amount at Risk; (ii) for any applicable riders which are part of the policy; and (iii) for all ratings, if applicable. The charge for the Net Amount at Risk is an amount equal to the applicable Applied Monthly Rate multiplied by the Net Amount at Risk on the Date of Issue or such Processing Date as the case may be. Each Cost of Insurance Charge is deducted in advance of the insurance coverage to which it applies. The Net Amount at Risk is the amount determined by subtracting (a) from the greater of (b) or (c) where:

(a) is the Account Value at the end of the immediately preceding Valuation Period less all charges due on the Date of Issue or Processing Date;

(b) is the Sum Insured divided by 1.0032737; and

(c) is the amount defined in (a) multiplied by the applicable Death Benefit Factor shown in Section 2.

The Applied Monthly Rates are the actual rates used to calculate the Cost of Insurance Charge. We will determine the Applied Monthly Rates to be used for this policy. The Applied Monthly Rates will be based on our expectations of future mortality, persistency, investment earnings, and expense experience and will never be greater than the Maximum Monthly Rates shown in Section 2. They will be reviewed at least once every 5 Policy Years. Any change in Applied Monthly Rates will be made on a uniform basis for Insureds of the same sex, Issue Age, and premium class, including smoker status, and whose policies have been in force for the same length of time.

## 10. LOANS

You may borrow money from us on receipt at our Servicing Office of a completed form satisfactory to us assigning the policy as the only security for the loan.

Loans may be made after the first Policy Year if a Loan Value is available. You will be notified in writing if the Company chooses to make loans available during the first Policy Year. Each loan must be for at least $1,000. We may defer loans as provided by law. We will not defer loans for more than 6 months. We will not defer loans that are applied to pay premiums on policies with us. Loans, except those used to pay premiums on policies with us, may not be made if the policy is in a grace period as described in Section 8.

The Loan Value while the policy is in full force will be an amount equal to (i) the Surrender Value, less (ii) three times the monthly charges then being deducted from the Account Value, less (iii) an amount determined as follows:

* Deduct (ii) above from (i) above.

* Multiply the result by the difference between the effective annual rate then being charged on loans and the effective annual rate then being credited the Account Value up to and including indebtedness, as described in Section 9.

Values will be determined at the end of the Valuation Period in which the loan application is received at our Servicing Office.

Loan interest, at a rate described in the "Variable Loan Interest Rate" provision below, will accrue and be added to the loan daily and will bear interest from the date of accrual. Loan interest will be payable on each Annual Processing Date and on the date the loan is settled. Interest may be paid in advance at the equivalent effective rate. A loan may be repaid in full or in part at any time before the Insured's death, and while the policy is in full force.

### Variable Loan Interest Rate

We will annually determine in the month preceding the policy anniversary the Loan Interest Rate for this policy. This rate will apply to all indebtedness outstanding during the Policy Year next following the date of determination. The rate will not exceed the higher of (a) the "Published Monthly Average" for the calendar month, which is two months before the month in which the date of determination occurs; and (b) 5%.

The "Published Monthly Average" means Moody's Corporate Bond Yield Average–Monthly Average Corporates as published by Moody's Investors Service, Inc. or any successor thereto. If the "Published Monthly Average" is no longer published, we reserve the right to select a substitute that we deem appropriate, subject to applicable law, regulation, or other state requirement.

When a new rate is determined: (a) we may increase the previous rate if the increase would be at least 1/2%; and (b) we must reduce the previous rate if the decrease would be at least 1/2%. We will: (a) notify you of the initial Loan Interest Rate at the time a loan is made; and (b) notify you of any increase in the Loan Interest Rate if there is outstanding indebtedness on the policy. The policy will not lapse solely as a result of a change in the Loan Interest Rate.

### Dividends

This policy is not eligible for dividends.

9

U0902ANY

## 11. SURRENDERS AND WITHDRAWALS

We will determine the Surrender Value of the policy if we receive written notice requesting full surrender of this policy while this policy is in full force. We will process the request and pay the Surrender Value only if we have not received due proof that the Insured died prior to the Surrender Date. The Surrender Value will be calculated as of the Surrender Date. The Surrender Date is the end of the day in which we have received at our Servicing Office written notice requesting full surrender of this policy. We reserve the right to defer payment of the Surrender Value for up to six months.

While the policy is in full force, the Surrender Value will be an amount equal to the Account Value less any indebtedness less the Surrender Charge as shown in Section 1.

At any time after the first Policy Year, you may apply the Surrender Value to purchase a level amount of paid up whole life insurance under this policy. The amount of such paid up insurance and of the Surrender Value of that insurance will be calculated using guaranteed maximum mortality charges and 4% interest. No further expense charges will be deducted. The Minimum Total Sum Insured shown in Section 1 of this policy shall not be applicable in determining the paid up amount.

We may require evidence of insurability for any amount of insurance in excess of the Death Benefit under this policy on the date the Surrender Value is applied.

You may request a withdrawal of part of the Surrender Value in accordance with our rules then in effect. The amount of the withdrawal will be removed from the Account Value. For each withdrawal, we reserve the right to make a charge to the Account Value of an amount not to exceed $50. In addition, the charge for a reduction in coverage described in Section 4 may be deducted from the Account Value to the extent that the withdrawal causes a reduction in Sum Insured. Generally, each withdrawal must be at least $1,000. No withdrawal can be made unless the resulting Sum Insured is at least equal to the Minimum Sum Insured shown in Section 1 and the resulting Surrender Value is equal to or greater than three times the Section 9 charges at the time of withdrawal.

All amounts withdrawn will be subtracted from your Account Value and will also reduce the 5 Year Cumulative Premium Balance as described in Section 7. Further, the Sum Insured will be reduced by the total of all withdrawals. If the Death Benefit Factor is in effect, the withdrawals will reduce the Death Benefit of the policy by the amount withdrawn times the Death Benefit factor until the Death Benefit Factor is not in effect. Your Death Benefit will continue to be determined in accordance with Section 5, subject to these provisions.

## 12. BASIS OF COMPUTATIONS

Minimum surrender values referred to in the policy, if any, are computed on the basis of the Commissioners 1980 Standard Ordinary Sex-distinct Smoker-distinct Mortality Tables with percentage ratings, if applicable, and based on the underwriting class of the Insured on the Date of Issue. The computations are made using interest at the rate of 3% a year. Reserves will be at least as great as the minimum required by the state in which the policy is issued for delivery.

The Account Value while the policy is in full force is computed as described in Section 9. A detailed statement of the method of computation of values has been filed with insurance supervisory officials of the jurisdiction in which this policy has been delivered. The values are not less than the minimum values under the law of that jurisdiction. Any values, reserves and premiums applicable to any provision for an additional benefit shall be specified in the provision and have no effect in determining the values available under the provisions of this Section 12.

## 13. REPORTS TO OWNER

While the policy is in full force, we will send you a statement at least annually and for no charge, setting forth the following information:
(a) The Death Benefit and the Account Value, both as of the date of the report;
(b) Payments received and charges made since the last report;
(c) Withdrawals since the last report;
(d) Loan information; and,
(e) Interest credited, monthly deductions and any other information required by the New York Superintendent of Insurance.

On request, we will furnish a report of projected future values. We may charge a reasonable fee, not to exceed $50, for such report. We will furnish any other reports that may be required by law or regulation.

10

## 14. REINSTATEMENT

If there is a Policy Default under Section 8, the policy may be reinstated within 3 years after the beginning of the grace period.

The date of reinstatement of the policy is the date on which we determine that all 3 requirements below have been satisfied:

(1)  Receipt of a written application for reinstatement.

(2)  Receipt of evidence of insurability satisfactory to us.

(3)  Receipt of a payment which, after deduction of the applicable Premium Charges, is at least equal to the sum of (i) all unpaid charges described in Section 9, plus interest on each such charge from the date due up to and including the date of reinstatement at an annual effective rate of 6%, compounded annually, plus (ii) the total of all Section 9 charges for the three Processing Dates next following the date of reinstatement, where the Section 9 charges for the three Processing Dates next following the date of reinstatement are assumed to be equal to such charges on the date of reinstatement.

Requirements (2) and (3) must be satisfied within 60 days after the date we receive the application for reinstatement.

The Suicide Exclusion does not begin anew upon reinstatement. On the date of reinstatement of the policy (i) the death benefit of the policy will be the same as if no lapse had occurred and (ii) the policy will have indebtedness equal to any indebtedness at the end of the day immediately preceding the date of reinstatement.

The Account Value on the date of reinstatement of the policy will be the payment received in connection with the reinstatement less the sum of all Section 9 charges that would have been made from the date of lapse to the date of reinstatement if the policy had not lapsed and less interest on each such charge at an effective annual rate of 6%, compounded annually, from the date such charge would have been due up to and including the date of reinstatement.

## 15. OWNER AND BENEFICIARY

The Owner and the Beneficiary will be as shown in the application unless you change them or they are changed by the terms of this provision.

You shall have the sole and absolute power to exercise all rights and privileges without the consent of any other person unless you provide otherwise by written notice.

Unless otherwise provided, if there is no surviving Beneficiary upon the death of the Insured, or if the Beneficiary and the Insured die simultaneously, you will be the Beneficiary, but if you were the Insured, your estate will be Beneficiary.

While the Insured is alive, you may change the Owner and Beneficiary by written notice. You may also revoke any change of Owner prior to its effective date by written notice. No change or revocation will take effect unless we receive the notice. If such receipt occurs, then (i) a change of Beneficiary will take effect on the date the notice is signed, and (ii) a change or a revocation of Owner will take effect as of the date specified in the notice, or if no such date is specified, on the date the notice is signed. A change or revocation will take effect whether or not you or the Insured is alive on the date we receive the notice. A change or revocation will be subject to the rights of any assignee of record with us and subject to any payment made or other action taken by us before we receive the notice.

## 16. INTEREST ON PROCEEDS

We will pay interest on proceeds paid in one sum in the event of the Insured's death from the date of death to the date of payment. The rate will be the same as declared for Option 1 in Section 23, Settlement Provisions, or such greater rate as is required by law.

## 17. CLAIMS OF CREDITORS

The proceeds and any income payments under the policy will be exempt from the claims of creditors to the extent permitted by law. These proceeds and payments may not be assigned or withdrawn before becoming payable without our agreement.

11

U1102ANY

## 18. ASSIGNMENT

Your interest in this policy may be assigned without the consent of any revocable Beneficiary. Your interest, any interest of the Insured and of any revocable Beneficiary shall be subject to the terms of the assignment.

We will not be on notice of any assignment unless it is in writing, nor will we be on notice until a duplicate of the original assignment has been received at our Servicing Office. We assume no responsibility for the validity or sufficiency of any assignment.

## 19. INCONTESTABILITY

This policy, except any provision for reinstatement or policy change requiring evidence of insurability, shall be incontestable after it has been in force during the lifetime of the Insured for two years from its Date of Issue, except for nonpayment of premiums.

A reinstatement and any policy change requiring evidence of insurability shall be incontestable after it has been in force during the lifetime of the Insured for two years from the effective date of such reinstatement or policy change, except for nonpayment of premiums.

Any contest will be based only on material misrepresentations.

Any premium payment which we accept under Section 6 subject to insurability shall be considered a policy change for the purposes of this Section. Any increase in the Death Benefit resulting from such payment shall be governed by the immediately preceding paragraph.

## 20. MISSTATEMENTS

If the age or sex of the Insured has been misstated, we will adjust the Sum Insured and every other benefit to that which would have been purchased at the correct age or sex by the most recent Cost of Insurance charge deducted under Section 9.

## 21. SUICIDE EXCLUSION

If the Insured commits suicide, within 2 years from the Date of Issue, the policy will terminate on the date of such suicide and we will pay (in place of all other benefits, if any) an amount equal to the Premiums paid less the amount of any indebtedness on the date of death and less any withdrawal under Section 11. If the Insured commits suicide after 2 years from the Date of Issue and within 2 years from the effective date of any increase in the Death Benefit resulting from any payment of Premium we are authorized to refuse under Section 6, the benefits payable under the policy will not include the amount of such Death Benefit increase but will include the amount of such Premium.

## 22. THE CONTRACT

The written application for the policy is attached at issue. The entire contract between the applicant and us consists of the policy, such application, and any riders and endorsements. However, additional written requests or applications for policy changes or acceptance of excess payment under Section 6 may be submitted to us after issue and such additional requests may become part of the policy.

All statements made in any application shall be deemed representations and not warranties. We will use no statement made by or on behalf of the Insured to defend a claim under the policy unless it is in a written application. Policy Years, policy months, and policy anniversaries are measured from the Date of Issue.

Any reference in this policy to a date means a calendar day ending at midnight local time at our Servicing Office.

An exchange of this policy for a new policy on a different plan may be made by agreement between you and us in accordance with our published rules in effect at that time.

We reserve the right to make any changes necessary in order to keep this policy in compliance with any changes in federal or state tax laws. Other changes in this policy may be made by agreement between you and us. Only the President, Vice President, the Secretary, or an Assistant Secretary of the Company has authority to waive or agree to change in any respect any of the conditions or provisions of the policy, or to extend credit or to make an agreement for us.

12

## 23. SETTLEMENT PROVISIONS

### Optional Methods of Settlement

In place of a single payment, an amount of $1,000 or more payable under the policy as a benefit or as the Surrender Value, if any, may be left with us, under the terms of a supplementary agreement. The agreement will be issued when the proceeds are applied through the choice of any one of the options below, or any additional options we, in our sole discretion, may make available after issue. We shall at least annually declare the rate of interest or amount of payment for each option. Such declaration shall be effective until the date specified in the next declaration.

**Option 1**–Interest Income at the declared rate but not less than 3% a year on proceeds held on deposit. The proceeds may be paid or withdrawn in whole or in part at any time as elected.

**Option 2A**–Income of a Specified Amount, with payments each year totaling at least 1/12th of the proceeds, until the proceeds plus interest is paid in full. We will credit interest on unpaid balances at the declared rate but not less than 3% a year.

**Option 2B**– Income for a Fixed Period with each payment as declared but not less than that shown in the Table for Option 2B.

**Option 3**– Life Income with Payments for a Guaranteed Period, with each payment as declared but not less than that shown in the Table for Option 3. If the Payee dies within that period, we will pay the present value of the remaining payments. In determining present value, we will use the same interest rate used to determine the payments for this option.

**Option 4**– Life Income without Refund at the death of the Payee of any part of the proceeds applied. The amount of each payment shall be as declared but not less than that shown in the Table for Option 4.

**Option 5**– Life Income with Cash Refund at the death of the Payee of the amount, if any, equal to the proceeds applied less the sum of all income payments made. The amount of each payment shall be as declared but not less than that shown in the Table for Option 5.

You may choose an option by written notice to us: (a) while the Insured is alive; and (b) before the proceeds become payable. If you have made no effective choice, the Payee may make one by written notice within: (a) 6 months after the death of the Insured; or (b) 2 months after the date on which the proceeds, if any, are payable in any case except death.

Your annuity payment for Options 1, 2A, and 2B will be the greater of (a) the rate guaranteed in the policy or (b) the current rate (declared annually) by the Company. For Options 3, 4, and 5, once annuity payments have begun, the amount of the annuity payments will not change.

No choice of an option may provide for payments of less than $50.00. The first payment will be payable as of the date the proceeds are applied, except that under Option 1 it will be payable at the end of the first payment interval.

The Payee under an option shall be the Insured, if living, and otherwise the Beneficiary.

No option may be chosen without our consent if the proceeds are payable: (1) in any case, except death, before the policy has been in force on the same plan for at least 5 years; or (2) in any case to an executor, administrator, trustee, corporation, partnership, association, or assignee.

A Payee may, by written notice, name and change a Contingent Payee to receive any final amount that would otherwise be payable to the Payee's estate.

U1302ANY

**Table for Settlement Options 2B, 3, 4 and 5 – MALE***
(Monthly payments for each $1,000 of proceeds applied)

| Option 2B Income for a Fixed Period | | Age of Payee at Birthday Nearest Payment Date of First | Option 3 Life Income with Guaranteed Period | | Option 4 Life Income without Refund | Option 5 Life Income with Cash Refund |
|---|---|---|---|---|---|---|
| Period of Years | Payment | | 10 Years | 20 Years | | |
| 1 | 84.46 | 40 | 3.64 | 3.60 | 3.66 | 3.56 |
| 2 | 42.86 | 41 | 3.69 | 3.64 | 3.71 | 3.60 |
| 3 | 28.99 | 42 | 3.74 | 3.68 | 3.76 | 3.64 |
| 4 | 22.06 | 43 | 3.79 | 3.73 | 3.81 | 3.68 |
| 5 | 17.91 | 44 | 3.85 | 3.77 | 3.87 | 3.73 |
| 6 | 15.14 | 45 | 3.90 | 3.82 | 3.93 | 3.77 |
| 7 | 13.16 | 46 | 3.96 | 3.87 | 3.99 | 3.82 |
| 8 | 11.68 | 47 | 4.02 | 3.92 | 4.05 | 3.87 |
| 9 | 10.53 | 48 | 4.09 | 3.97 | 4.12 | 3.92 |
| 10 | 9.61 | 49 | 4.15 | 4.03 | 4.19 | 3.98 |
| 11 | 8.86 | 50 | 4.22 | 4.08 | 4.27 | 4.04 |
| 12 | 8.24 | 51 | 4.29 | 4.14 | 4.34 | 4.10 |
| 13 | 7.71 | 52 | 4.27 | 4.20 | 4.43 | 4.16 |
| 14 | 7.26 | 53 | 4.45 | 4.26 | 4.51 | 4.23 |
| 15 | 6.87 | 54 | 4.54 | 4.32 | 4.60 | 4.30 |
| 16 | 6.53 | 55 | 4.62 | 4.39 | 4.70 | 4.37 |
| 17 | 6.23 | 56 | 4.72 | 4.45 | 4.80 | 4.45 |
| 18 | 5.96 | 57 | 4.82 | 4.51 | 4.91 | 4.53 |
| 19 | 5.73 | 58 | 4.92 | 4.58 | 5.03 | 4.61 |
| 20 | 5.51 | 59 | 5.03 | 4.64 | 5.15 | 4.70 |
| 21 | 5.32 | 60 | 5.14 | 4.71 | 5.28 | 4.79 |
| 22 | 5.15 | 61 | 5.26 | 4.78 | 5.42 | 4.89 |
| 23 | 4.99 | 62 | 5.39 | 4.84 | 5.57 | 4.99 |
| 24 | 4.84 | 63 | 5.52 | 4.90 | 5.74 | 5.10 |
| 25 | 4.71 | 64 | 5.66 | 4.96 | 5.91 | 5.21 |
| 26 | 4.59 | 65 | 5.81 | 5.02 | 6.10 | 5.33 |
| 27 | 4.47 | 66 | 5.96 | 5.08 | 6.29 | 5.45 |
| 28 | 4.37 | 67 | 6.11 | 5.13 | 6.50 | 5.58 |
| 29 | 4.27 | 68 | 6.28 | 5.18 | 6.73 | 5.72 |
| 30 | 4.18 | 69 | 6.44 | 5.23 | 6.97 | 5.86 |
| Annual, Semi−annual or quarterly payments under Option 2B are 11.839, 5.963 and 2.993 respectively times the monthly payments. | | 70 | 6.61 | 5.27 | 7.23 | 6.01 |
| | | 71 | 6.78 | 5.31 | 7.51 | 6.06 |
| | | 72 | 6.96 | 5.34 | 7.80 | 6.33 |
| | | 73 | 7.14 | 5.37 | 8.12 | 6.51 |
| | | 74 | 7.32 | 5.40 | 8.45 | 6.68 |
| | | 75 | 7.49 | 5.42 | 8.82 | 6.87 |
| | | 76 | 7.67 | 5.44 | 9.21 | 7.08 |
| | | 77 | 7.84 | 5.44 | 9.62 | 7.28 |
| | | 78 | 8.01 | 5.47 | 10.07 | 7.52 |
| | | 79 | 8.17 | 5.48 | 10.55 | 7.74 |
| | | 80 | 8.33 | 5.49 | 11.06 | 7.97 |
| | | 81 | 8.48 | 5.49 | 11.61 | 8.26 |
| | | 82 | 8.61 | 5.50 | 12.19 | 8.50 |
| | | 83 | 8.74 | 5.50 | 12.81 | 8.76 |
| | | 84 | 8.86 | 5.51 | 13.46 | 9.11 |
| | | 85 & over | 8.97 | 5.51 | 14.16 | 9.39 |
| | | Options 3, 4 and 5 are available only at the ages shown | | | | |

*Blended 1983 Individual Annuitant Mortality Table D, Interest 3%.

14

**Table for Settlement Options 2B, 3, 4 and 5 – FEMALE\***
**(Monthly payments for each $1,000 of proceeds applied)**

| Option 2B Income for a Fixed Period | | Age of Payee at Birthday Nearest Date of First Payment | Option 3 Life Income with Guaranteed Period | | Option 4 Life Income without Refund | Option 5 Life Income with Cash Refund |
|---|---|---|---|---|---|---|
| Period of Years | Payment | | 10 Years | 20 Years | | |
| 1 | 84.46 | 40 | 3.42 | 3.40 | 3.42 | 3.37 |
| 2 | 42.86 | 41 | 3.46 | 3.43 | 3.46 | 3.41 |
| 3 | 28.99 | 42 | 3.50 | 3.47 | 3.50 | 3.44 |
| 4 | 22.06 | 43 | 3.54 | 3.51 | 3.54 | 3.48 |
| 5 | 17.91 | 44 | 3.58 | 3.55 | 3.59 | 3.52 |
| 6 | 15.14 | 45 | 3.63 | 3.59 | 3.63 | 3.56 |
| 7 | 13.16 | 46 | 3.67 | 3.63 | 3.68 | 3.60 |
| 8 | 11.68 | 47 | 3.72 | 3.68 | 3.73 | 3.64 |
| 9 | 10.53 | 48 | 3.77 | 3.72 | 3.79 | 3.69 |
| 10 | 9.61 | 49 | 3.83 | 3.77 | 3.84 | 3.74 |
| 11 | 8.86 | 50 | 3.89 | 3.82 | 3.90 | 3.79 |
| 12 | 8.24 | 51 | 3.95 | 3.88 | 3.97 | 3.84 |
| 13 | 7.71 | 52 | 4.01 | 3.93 | 4.03 | 3.89 |
| 14 | 7.26 | 53 | 4.08 | 3.99 | 4.10 | 3.95 |
| 15 | 6.87 | 54 | 4.15 | 4.04 | 4.18 | 4.01 |
| 16 | 6.53 | 55 | 4.22 | 4.11 | 4.25 | 4.07 |
| 17 | 6.23 | 56 | 4.30 | 4.17 | 4.34 | 4.14 |
| 18 | 5.96 | 57 | 4.38 | 4.23 | 4.42 | 4.21 |
| 19 | 5.73 | 58 | 4.47 | 4.30 | 4.52 | 4.28 |
| 20 | 5.51 | 59 | 4.56 | 4.37 | 4.61 | 4.36 |
| 21 | 5.32 | 60 | 4.65 | 4.44 | 4.72 | 4.44 |
| 22 | 5.15 | 61 | 4.76 | 4.51 | 4.83 | 4.52 |
| 23 | 4.99 | 62 | 4.86 | 4.58 | 4.95 | 4.61 |
| 24 | 4.84 | 63 | 4.98 | 4.65 | 5.07 | 4.70 |
| 25 | 4.71 | 64 | 5.10 | 4.72 | 5.21 | 4.80 |
| 26 | 4.59 | 65 | 5.22 | 4.79 | 5.35 | 4.91 |
| 27 | 4.47 | 66 | 5.36 | 4.86 | 5.51 | 5.02 |
| 28 | 4.37 | 67 | 5.50 | 4.93 | 5.67 | 5.13 |
| 29 | 4.27 | 68 | 5.65 | 5.00 | 5.85 | 5.26 |
| 30 | 4.18 | 69 | 5.80 | 5.06 | 6.04 | 5.38 |
| | | 70 | 5.96 | 5.12 | 6.25 | 5.52 |
| | | 71 | 6.14 | 5.18 | 6.47 | 5.67 |
| | | 72 | 6.31 | 5.23 | 6.71 | 5.82 |
| | | 73 | 6.50 | 5.28 | 6.97 | 5.99 |
| | | 74 | 6.69 | 5.32 | 7.26 | 6.15 |
| | | 75 | 6.89 | 5.35 | 7.56 | 6.33 |
| | | 76 | 7.09 | 5.39 | 7.90 | 6.53 |
| | | 77 | 7.29 | 5.41 | 8.26 | 6.72 |
| | | 78 | 7.49 | 5.43 | 8.65 | 6.95 |
| | | 79 | 7.69 | 5.45 | 9.07 | 7.17 |
| | | 80 | 7.89 | 5.47 | 9.53 | 7.40 |
| | | 81 | 8.08 | 5.48 | 10.03 | 7.67 |
| | | 82 | 8.26 | 5.49 | 10.57 | 7.92 |
| | | 83 | 8.43 | 5.50 | 11.16 | 8.23 |
| | | 84 | 8.59 | 5.50 | 11.79 | 8.50 |
| | | 85 & over | 8.74 | 5.50 | 12.48 | 8.79 |

Annual, Semi-annual or quarterly payments under Option 2B are 11.839, 5.963 and 2.993 respectively times the monthly payments.

Options 3, 4 and 5 are available only at the ages shown

\*Blended 1983 Individual Annuitant Mortality Table D, Interest 3%.

15

U1502ANY



Life Insurance Company

P.O. Box 111
John Hancock Place
Boston, Massachusetts 02117
(800)−777−1377

**GUARANTEED DEATH BENEFIT ENDORSEMENT (To be made only by the Company at its Home Office in Boston, MA)**

**The following is added to Section 7:**

When in effect, the Lapse Protection Feature is a guarantee that the Sum Insured and any rider benefits of your policy will not terminate, regardless of the Account Value.

To determine if the Lapse Protection Feature is in effect, we will first determine the "Lapse Protection Measure" at the beginning of each Processing Date.

The "Lapse Protection Measure" is equal to (f) times (a + b − c − d − e) where:

   (a) is the Lapse Protection Measure on the immediately preceding Processing Date; and

   (b) is any Premium received since the immediately preceding Processing Date; and

   (c) is any applicable Lapse Protection Premium Reduction. The Lapse Protection Premium Reduction is determined in accordance with footnote 2 of the Table of Lapse Protection Factors in Section 2 and is based on any Premium received since the immediately preceding Processing Date; and

   (d) is the sum of any loans or any withdrawal(s), less any repayment(s) made since the immediately preceding Processing Date; and

   (e) is the applicable Lapse Protection Monthly Premium (as determined in accordance with footnote 1 of the Table of Lapse Protection Factors in Section 2) for the immediately preceding Policy month; and

   (f) is 1.00 plus the applicable Lapse Protection Monthly Accumulation Factor (as shown in column (f) of the Table of Lifetime Lapse Protection Factors in Section 2).

The Lapse Protection Measure on the Date of Issue is equal to zero. On any Processing Date after the Date of Issue, the Lapse Protection Measure can be greater than, less than or equal to zero.

On a Grace Period Testing Date, if the Lapse Protection Measure equals or exceeds zero, the Lapse Protection Feature will be in effect from the Grace Period Testing Date in question to the next Grace Period Testing Date.

If there are monthly charges that remain unpaid because of this Feature, we will deduct such charges when there is sufficient Account Value to pay them.

For the purpose of calculating the Lapse Protection Measure, the cost of any riders, ratings, or additional benefits elected are as shown in the Rider Contribution to Lapse Protection Monthly Premium column of the Rider Information table in Section 1.

The Table of Lapse Protection Factors (as shown in Section 2) may change in the event of any change in Sum Insured or rider benefits. We will send notice to your last known address of any such changes in the Table of Lapse Protection Factors.

The Lapse Protection Feature will terminate on the date the policy lapses in accordance with Section 8. The Lapse Protection Feature may not be reinstated after the policy terminates in accordance with Section 8.

If at the end of the Age 100 Adjustment Date the Lapse Protection Feature is in effect, it will remain in effect and the death benefit of the policy and any rider benefits, as described in Section 5, will be guaranteed not to terminate for as long as the Insured, or Surviving Insured if this policy is survivorship life insurance, is living.

**Section 8 is deleted and replaced with the following:**

If, at the end of any Grace Period Testing Date, neither the 5 Year Guaranteed Death Benefit Feature nor the Lapse Protection Measure is in effect (as determined in accordance with Section 7) and the Surrender Value is less than the total of all unpaid Section 9 charges as of such Grace Period Testing Date, the policy will be deemed to be in default as of the end of such Grace Period Testing Date.

We will send notice to your last known address and to the last known address of any assignee of record with us at least 61 days before the end of this grace period specifying that there is a default and the minimum amount you must pay to cure the default ("Default Payment").

During the first 5 Policy Years, the Default Payment will be equal to an amount at least equal to the lesser of (a), (b) and (c), where:

    (a)  equals the amount required to increase the 5 Year Cumulative Premium Balance described in Section 7 to an amount equal to the applicable 5 Year Guaranteed Death Benefit Premium Target, as determined in accordance with Section 7, plus three times the 5 Year Guaranteed Death Benefit Premium shown in Section 1 for the policy month in which the date of default occured; and

    (b)  is a payment at least equal to the amount required to increase the Lapse Protection Measure to an amount equal to three times the applicable Lapse Protection Monthly Premium, as determined in accordance with Section 7, for the policy month in which the date of default occured; and

    (c)  equals the amount which after deduction of the Premium Charge is equal to (i) the amount, if any, by which the Surrender Value is less than zero on the date of default plus (ii) any and all Section 9 charges unpaid prior to the date of default plus (iii) three times the total of all Section 9 charges for the date of default.

During Policy Years 6 and thereafter, the Default Payment will be equal to an amount at least equal to the lesser of (a) and (b), where;

    (a)  is a payment at least equal to the amount required to increase the Lapse Protection Measure to an amount equal to three times the applicable Lapse Protection Monthly Premium, as determined in accordance with Section 7, for the policy month in which the date of default occurred; and

    (b)  equals the amount which after deduction of the Premium Charge is equal to (i) the amount, if any, by which the Surrender Value is less than zero on the date of default plus (ii) any and all Section 9 charges unpaid prior to the date of default plus (iii) three times the total of all Section 9 charges for the date of default.

An amount at least equal to the Default Payment must be received within a grace period of 61 days after the date of default.

If a payment at least equal to the Default Payment is received before the end of the grace period, the policy will then no longer be in default. Any payment received will be processed as of the date of receipt at our Servicing Office. When payment is received, any Section 9 charges which are past due and unpaid will be deducted from the Account Value.

If a payment at least equal to the Default Payment is not received by the end of the grace period, then the policy will lapse and will no longer be in full force. No Rider provisions will be in effect after the policy ceases to be in full force.

Upon lapse of the policy, the remaining Surrender Value, if any, will be paid to the Owner. If the Insured, or Surviving Insured if this policy is survivorship life insurance, dies during the grace period, we will deduct from the proceeds all Section 9 charges due and unpaid on the date of the death.

**The fourth paragraph of Section 11 is deleted and replaced with the following:**

All amounts withdrawn will be subtracted from your Account Value and will also reduce the 5 Year Cumulative Premium Balance and the Lapse Protection Measure as described in Section 7. Further, the Sum Insured will be reduced by the total of all withdrawals. If the Death Benefit Factor is in effect, the withdrawals will reduce the Death Benefit of the policy by the amount withdrawn times the Death Benefit factor until the Death Benefit Factor is not in effect. Your Death Benefit will continue to be determined in accordance with Section 5, subject to these provisions.

**The following is added to Section 14:**

The Lapse Protection Feature will not be reinstated after the policy terminates in accordance with Section 8.

**Signed for the Company at Boston, Massachusetts.**

Secretary

*John Hancock.*

## Application for Life Insurance

☐ John Hancock Life Insurance Company of New York
☐ John Hancock Life Insurance Company
(hereinafter referred to as The Company)

- Print and use black ink. Any changes must be initialed by the Proposed Life Insured(s) and/or Owner(s).

**Mailing Address:**
John Hancock New York
New Business Service Center
PO Box 4608
Niagara Square Station
Buffalo NY 14240-4608

**Courier Address:**
John Hancock New York
New Business Service Center
200 Bloor Street East
Toronto ON
Canada M4W 1E5

Policy No. (for Internal Use Only)

### Proposed Life Insured (Life One)

1. a) Name First *EDITH*  Middle  Last *GOLDSTEIN*

   b) Date of Birth mmm *10* dd *28* yyyy *24*  c) Sex ☐ M ☑ F

   d) Place of Birth State *HUNGARY*  Country

   e) Citizenship ☑ U.S. ☐ Other

   f) Social Security/ Tax ID Number *1 0 5 3 4 2 2 4 6*  State

   g) Driver's License No. *NONE*

   h) Home Address Street No. & Name, Apt No., City, State, Zip code *4 FAHEL CT #301*
   *MONROE N.Y. 10950*

   i) Years at this Address *20+*

   j) Tel Nos. Home ( )  Business ( )

   k) Name of Employer

   Address of Employer Street No. & Name, Apt No., City, State, Zip code

   l) Occupation

### Proposed Life Insured (Life Two)

2. a) Name First  Middle  Last

   b) Date of Birth mmm  dd  yyyy  c) Sex ☐ M ☐ F

   d) Place of Birth State  Country

   e) Citizenship ☐ U.S. ☐ Other

   f) Social Security/ Tax ID Number

   g) Driver's License No.  State

   h) Home Address Street No. & Name, Apt No., City, State, Zip code

   i) Years at this Address

   j) Tel Nos. Home ( )  Business ( )

   k) Name of Employer

   Address of Employer Street No. & Name, Apt No., City, State, Zip code

   l) Occupation

### Owner - Complete information only if Owner is other than Proposed Life Insured.

If Trust Owner, complete questions 3. a), c) and d) and Trust Certification PS5101NY.  Date of Trust mmm *09* dd *01* yyyy *2005*

3. a) Name *THE GOLDSTEIN FAMILY IRREVOCABLE LIFE INSURANCE TRUST*

   b) Relationship to Proposed Life Insured(s) *Trust*

   c) Address Street No. & Name, Apt No., City, State, Zip code *17 FOREST RD. #201 MONROE N.Y. 10950*

   d) Social Security/ Tax ID Number *20 66 7 7824*

4. Multiple Owners - *Provide details as above for other owner(s) on a separate page.*  Type of ownership ☐ Joint with right of survivorship  ☐ Tenants in Common

### Other Information - MUST BE COMPLETED

5. Is there an intention that any party, other than the Owner, will obtain any right, title or interest in any policy issued on the life of the Proposed Life Insured(s) as a result of this application?  ☐ Yes ☑ No

6. Will all or part of the premium be financed?  ☐ Yes ☑ No

© 2005 John Hancock Life Insurance Company of New York, Valhalla, NY. All rights reserved.
NB5000NY (01/2005)

## Beneficiary Information - Subject to change by Owner

7. a) Name of
Primary Beneficiary

First ___ Middle ___ Last
*THE GOLDSTEIN FAMILY IRREVOCABLE LIFE INSURANCE TRUST*

b) Relationship to Proposed
Life Insured(s)

*Trust*

c) Name of
Secondary Beneficiary

First ___ Middle ___ Last

d) Relationship to
Proposed Life Insured(s)

## Coverage Applied For

8. Complete the applicable Policy Details Form NB5007NY (Universal Life), NB5008NY (Variable Life) or NB5013NY (Term & Traditional Life) for details of the policy being applied for, including Supplementary Benefits and other benefit options.

## Juvenile Insurance - Do not complete for Children's Insurance Rider.

9. a) Are all siblings equally insured?    ☐ Yes   ☐ No

b) Amount of life insurance currently in force or pending on parent(s)/guardian(s)    $

If none, give details.

## Existing and Pending Insurance - Proposed Life Insured(s)

| | Life One | Life Two |
|---|---|---|
| 10. a) Total insurance in force on the Proposed Life Insured(s) | $ 20,000,000 | $ |
| b) Including this application, total insurance currently pending with all companies | $ 13,000,000 | $ |
| c) Of the above pending amount in 10. b), how much do you intend to accept? | $ 200 - not sure about | $ |

*$5,000,000 pending - possibility to withdraw*

d) Have you ever had an application for life or health insurance declined, postponed, rated or offered with a reduced face amount?

Life One: ☑ No   ☐ Yes - give details
Life Two: ☐ No   ☐ Yes - give details

e) Provide information for each policy in force on the Proposed Life Insured(s). (Attach additional page if necessary.)

| Proposed Life Insured | Company | Insurance Group | Personal | Business | mmm | Issue Date dd | yyyy | To Remain In Force? Yes | No | Face Amount |
|---|---|---|---|---|---|---|---|---|---|---|
| ☑ One ☐ Two | VSL | ☐ | ☑ | ☐ | | | | ☑ | | $ 10,000,000 |
| ☑ One ☐ Two | Lincoln | ☐ | ☑ | ☐ | | | | ☑ | | $ 10,000,000 |
| ☐ One ☐ Two | | ☐ | ☐ | ☐ | | | | ☐ | ☐ | $ |
| ☐ One ☐ Two | | ☐ | ☐ | ☐ | | | | ☐ | ☐ | $ |

f) Is Disability Insurance (DI) with Provident or Long Term Care (LTC) Insurance with the Company currently being applied for?

|  | Life One | | | | Life Two | | |
|---|---|---|---|---|---|---|---|
| | ☐ Yes ☑ No | | | | ☐ Yes ☐ No | | |
| | mmm | dd | yyyy | | mmm | dd | yyyy |

If Yes, provide ☐ DI date of application

☐ LTC date of application

## Existing Insurance - Owner(s) Replacement(s) - MUST BE COMPLETED

11. Is this insurance to replace, or will it cause a change in, or involve a loan under, any insurance or annuity policy on any Proposed Life Insured's life or in any insurance or annuity policy owned by the Owner?   ☐ Yes   ☑ No   If Yes, please complete the necessary replacement forms.

© 2005 John Hancock Life Insurance Company of New York, Valhalla, NY  All rights reserved.
NB5000NY (01/2005)

## Financial Questions

Complete when applying for Face Amount of $250,000 or more, or any amount of Business insurance, or when a Proposed Life Insured is over age 70.  (Please submit copies of financial statements, estate analysis, contractual agreements, etc.)

12.a) What is the purpose of this insurance?
(e.g. estate conservation, buy-sell, keyperson)   *Estate conservation*

b) How was the need for the Face Amount determined?   *financial advisors*

|  | Life One | Life Two |
|---|---|---|
| c) Gross annual earned income (salary, commissions, bonuses, etc.) | $ | $ |
| d) Gross annual unearned income (dividends, interest, net real estate income, etc.) | $ *500,000+* | $ |
| e) Household net worth (combined) | $ *55,500 Mil* | |

f) In the last 5 years, has/have either of the  Proposed Life Insured(s), or the business had any major financial problems (bankruptcy, etc.)?  ☐ No   ☐ Yes - give details

## Business Insurance - Complete for ALL Business Insurance

|  | Current Year | Previous Year |
|---|---|---|
| 13. a) Assets | $ | $ |
| b) Liabilities | $ | $ |
| c) Gross Sales | $ | $ |
| d) Net Income after taxes | $ | $ |
| e) Fair Market Value of the business | $ | $ |

f) What percentage of the business is owned by the Proposed Life Insured(s)?  _____ %

g) Are other partners/owners/executives being insured?  ☐ Yes  ☐ No
Give details:

## Smoking Questions

14. Have you ever used tobacco or nicotine products in any form (including cigarettes, cigars, cigarillos, a pipe, chewing tobacco, nicotine patches or gum)?

Proposed Life Insured (Life One) ☒ No   ☐ Yes - give details below

| Product | Frequency | Current | Past | Date last used mm dd yyyy |
|---|---|---|---|---|
| Cigarettes | pack(s) / day | ☐ | ☐ | |
| Cigars | x / day | ☐ | ☐ | |
| Other: | x / day | ☐ | ☐ | |

Proposed Life Insured (Life Two) ☐ No   ☐ Yes - give details below

| Product | Frequency | Current | Past | Date last used mm dd yyyy |
|---|---|---|---|---|
| Cigarettes | / day | ☐ | ☐ | |
| Cigars | x / day | ☐ | ☐ | |
| Other: | x / day | ☐ | ☐ | |

## Lifestyle Questions - Please provide details in No. 20 for "Yes" answers.

15. Do you engage in regular exercise?

Proposed Life Insured (Life One) ☐ No  ☒ Yes - give details below
a) What type of exercise?   *WALKING*
b) How many times a week?  *6*   c) How long? (Hours or minutes per occasion)  *30-45*

Proposed Life Insured (Life Two) ☐ No  ☐ Yes - give details below
a) What type of exercise?
b) How many times a week?   c) How long? (Hours or minutes per occasion)

|  | Life One | | Life Two | |
|---|---|---|---|---|
| 16. Do you expect to travel outside the U.S. or Canada, or change your country of residence in the next 2 years? | ☐ Yes | ☒ No | ☐ Yes | ☐ No |
| 17. a) Have you flown as a student pilot, licensed pilot, or crew member in any aircraft, including ultralight planes, in the last 2 years? If Yes, please complete Aviation Questionnaire NB5009NY. | ☐ Yes | ☒ No | ☐ Yes | ☐ No |
| b) Have you engaged in any form of motor vehicle or power boat racing, sky diving/parachuting, skin or scuba diving, hang-gliding, mountain climbing, or any other hazardous activities in the last 2 years? If Yes, please complete Avocation Questionnaire NB5010NY. | ☐ Yes | ☒ No | ☐ Yes | ☐ No |
| 18. a) Have you committed 2 or more moving violations within the last 2 years? | ☐ Yes | ☒ No | ☐ Yes | ☐ No |
| b) Have you been convicted of driving while intoxicated or while otherwise impaired? | ☐ Yes | ☒ No | ☐ Yes | ☐ No |
| 19. In the last 10 years, have you been convicted of a criminal offense? | ☐ Yes | ☒ No | ☐ Yes | ☐ No |

## 20.

### Proposed Life Insured (Life One)

| Question No. | Details for any "Yes" answers to Lifestyle Questions |
|---|---|
| | |

### Proposed Life Insured (Life Two)

| Question No. | Details for any "Yes" answers to Lifestyle Questions |
|---|---|
| | |

© 2005 John Hancock Life Insurance Company of New York, Valhalla, NY. All rights reserved.
NB5000NY (01/2005)

**Term Conversion - Complete only if applying for an increased amount or additional benefits.**

21. Term Life Policy No. | | | | | | | | |

Name of Proposed Life Insured

Name of Owner

This application is for   ☐ An increased Amount of Insurance:  (a) Face Amount under the Term Life Policy   $ _____

(b) Increased Amount being applied for   $ _____

☐ Additional benefits (including Survivorship) that are not provided under the Term Life policy

*(Complete appropriate Policy Details for Benefits being applied for.)*

**Doctor/Physician - MUST BE COMPLETED**

| Proposed Life Insured (Life One) | Proposed Life Insured (Life Two) |
|---|---|
| 22. a) Date of last visit    mm 08  dd    yyyy 2005 | a) Date of last visit    mm    dd    yyyy |
| b) Reason for the visit   *Rash on hands* | b) Reason for the visit |
| c) Diagnosis or outcome of the visit   *Use OTC cell cream* | c) Diagnosis or outcome of the visit |
| d) Treatment/medication prescribed   *n* | d) Treatment/medication prescribed |
| e) Name of doctor/physician consulted   First   Middle   Last  *Dr. Katz @ Eses Chaim* | e) Name of doctor/physician consulted   First   Middle   Last |
| f) Address   Street No. & Name, Suite No., City, State, Zip code  *49 Forest Drive Monroe, NY 10950* | f) Address   Street No. & Name, Suite No., City, State, Zip code |
| g) Provide name and address of doctor/physician with your complete medical records if other than above.   Name   First   Middle   Last | g) Provide name and address of doctor/physician with your complete medical records if other than above.   Name   First   Middle   Last |
| Address   Street No. & Name, Suite No., City, State, Zip code | Address   Street No. & Name, Suite No., City, State, Zip code |

**Medical Certification - Complete this section when submitting Medical Examination of another Insurer.**

23. The attached examination is on the life of:

| | Name of Proposed Life Insured | Name of Insurance Company | Date of Examination mm  dd  yyyy |
|---|---|---|---|
| 1. | | | |
| 2. | | | |

| | Life One | Life Two |
|---|---|---|
| a) To the best of your knowledge and belief, are the statements in the examination true as of the date this application is signed? | ☐ Yes  ☐ No | ☐ Yes  ☐ No |
| b) Has the person who was examined, consulted a doctor/physician or received medical or surgical advice since the date of the examination? If Yes, give details: | ☐ Yes  ☐ No | ☐ Yes  ☐ No |

**Special Requests**

24.

© 2005 John Hancock Life Insurance Company of New York, Vathalla, NY. All rights reserved.

NB5000NY (01/2005)

## Declarations and Authorizations

### DECLARATIONS

The Proposed Life Insured(s) and Owner(s) (or Parent or Guardian) declare that the statements and answers in this application and any form that is made part of this application are complete and true to the best of my/our knowledge and believe they are correctly recorded. All such statements and answers are representations, not warranties.

In addition, I/we understand and agree that:

1. The statements and answers in this application, which include the Policy Details and any supplemental form relating to the health, aviation or lifestyle of the Proposed Life Insured(s), will become part of the insurance policy issued as a result of this application.

2. (a) Any life insurance policy issued as a result of this application will be effective on the later of the date the first premium has been paid in full and the date the policy has been delivered. The insurance will not be in effect if there has been a deterioration in the insurability of any proposed life insured(s) since the date of the application.
If the Temporary Insurance Agreement (TIA) coverage is in effect and a subsequent policy is issued within 90 days of the date of the original application, the above paragraph only applies to any amount in excess of the TIA amount.

2. (b) If premiums are paid prior to delivery of the policy and the terms and conditions of the Temporary Insurance Agreement are satisfied, insurance prior to the effective date shall be provided only under the Agreement and according to its terms.

### AUTHORIZATION TO OBTAIN INFORMATION

I/We, the Proposed Life Insured(s), authorize:
1. John Hancock Life Insurance Company of New York or John Hancock Life Insurance Company (The Company) to obtain an investigative consumer report on me/us.
2. Any medical professional, medical care provider, hospital, clinic, laboratory, insurance company, the Medical Information Bureau (MIB Inc.), or any other similar person or organization to give The Company and its reinsurers information about me/us or any minor child/children who is/are to be insured.

The information collected by The Company may relate to the symptoms, examination, diagnosis, treatment or prognosis of any physical or mental condition.

In turn, The Company is free to disclose such information and any information developed during its evaluation of my/our application to:
(a) its reinsurers; (b) the MIB Inc.; (c) other insurance companies as designated by me/us; (d) me/us; (e) any medical professional designated by me/us; or (f) any person or entity entitled to receive such information by law or as I/we may further consent.
I/We acknowledge receipt of the Notice of Disclosure of Information relating to the underwriting process, investigative consumer reports and the MIB Inc.
This authorization will be valid for two years from the date shown. A photocopy of this authorization will be as valid as the original.
Information collected under this authorization will be used by The Company to evaluate my/our application for insurance, to evaluate a claim for benefits, or for reinsurance or other insurance purposes.
I am/We are entitled, or my/our authorized representative is entitled, to a copy of this authorization.

### OWNER/TAXPAYER CERTIFICATION - MUST BE COMPLETED

Under the penalties of perjury, I the Owner, certify that:
1. The number shown on Page 1 of the application is my correct taxpayer identification number (if number has not been issued, write "Applied for" in the box on Page 1), AND
2. Check the applicable box:
   [✓] I am not subject to Backup Tax Withholding because (a) I am exempt from Backup Tax Withholding, or (b) I have not been notified by the Internal Revenue Service (IRS) that I am subject to Backup Tax Withholding as a result of a failure to report all interest or dividends, or (c) the IRS has notified me that I am no longer subject to Backup Tax Withholding, AND
   [ ] The Internal Revenue Service (IRS) has notified me that I am subject to Backup Tax Withholding, AND
3. I am a U.S. resident (including a U.S. resident alien).
The Internal Revenue Service does not require your consent to any provision of this document other than the certifications required to avoid Backup Tax Withholding.

### Signatures - Please read all of the above Declarations and Authorizations before signing this form.

| Signed at  City | Monroe  State NY | This 28th | Day of November | Year 2005 |
|---|---|---|---|---|

Signature of Agent/Registered Representative (as Witness)
X

Signature of Proposed Life Insured One (Parent or Guardian, if under age 14 years and 6 months)
X

Consent of Juvenile Insurance or Parent or Guardian, if other than Owner
X

Signature of Proposed Life Insured Two (Parent or Guardian, if under age 14 years and 6 months)
X

[ ] Father   [ ] Mother   [ ] Guardian

| Signed at  City | Monroe  State NY | This 28th | Day of November | Year 2005 |
|---|---|---|---|---|

Signature of Agent/Registered Representative (as Witness)
X

Signature of Owner, if other than a Proposed Life Insured
(Signing Officer please provide title or corporate seal)
X   Karol Weinstock

Signature of Owner, if other than a Proposed Life Insured
(Signing Officer please provide title or corporate seal)
X

© 2005 John Hancock Life Insurance Company of New York, Valhalla, NY. All rights reserved.
NB5000NY (01/2005)

Page 5 of 7

*John Hancock*

## Policy Details - Universal Life
☐ John Hancock Life Insurance Company of New York
☐ John Hancock Life Insurance Company
(hereinafter referred to as The Company)
- *This form is part of the Application for Life Insurance for the Proposed Life Insured(s).*
- *Print and use black ink. Any changes must be initialed by the Proposed Life Insured(s) and/or Owner(s).*

**Mailing Address:**
John Hancock New York
New Business Service Center
PO Box 4608
Niagara Square Station
Buffalo NY 14240-4608

**Courier Address:**
John Hancock New York
New Business Service Center
200 Bloor Street East
Toronto ON
Canada M4W 1E5

**Proposed Life Insured (Life One)**

Name: Edith    First    Middle    Last: Goldstein

Name(s) of Owner(s): Bo The Goldstein Family Irrevocable Life Insurance Trust    Carol Weinstock  trustee

**Proposed Life Insured (Life Two)**

Name    First    Middle    Last

**Plan Name**

Single Life
☐ UL-G    ☐ Performance UL    ☐ Performance UL Core    ☑ Protection UL
☐ Protection UL-G    ☐ Performance Executive Universal Life    ☐ Other

Survivorship Life    ☐ Survivorship UL-G    ☐ Performance SUL    ☐ Other

**Amount**

1. Face Amount/Base Sum Insured (BSI) excluding any additional benefits    $ 10,000,000.—

**Premiums**

2. a) Frequency:    ☑ Annual    ☐ Semi-Annual    ☐ Quarterly    ☐ Monthly – Billed (UL-G and SUL-G only)    ☐ List Billed
☐ Pre-Authorized Checking (Complete "Request for Pre-Authorized Checking" - page 6 of the Application for Life Insurance)
☐ Monthly - EC/List Bill (Case No.    ) - (Existing Plan only) for Performance UL Core or Protection UL
☐ Other

**Premium Notices and Correspondence**

3. a) Send Premium Notices to:    ☑ Owner(s)    ☐ Life One    ☐ Life Two    ☐ Employer's Address
b) Send Correspondence to:    ☑ Same as Premium Notices (as above)
☐ Other: Name & Address    Name

Street No. & Name, Apt No., City, State, Zip code

c) Secondary Addressee - You can make the designation below when you or the Life Insured become a senior citizen (age 65 or older). The Company will also mail lapse notices for overdue premiums to any Secondary Addressee you designate. If you want this option, provide the following information.
Owner - Date of Birth    mmm    dd    yyyy    Name of Secondary Addressee

Street No. & Name, Apt No., City, State, Zip code

**UNIVERSAL LIFE - SINGLE LIFE**

4. a) Life Insurance Qualification Test
☐ Guideline Premium (Not available with Protection UL and Protection UL-G) Under this test, the sum of premiums paid into the policy may not at any time exceed the greater of (a) the Guideline Single premium, or (b) the sum of the Guideline Level Premiums to such date.
☑ Cash Value Accumulation (Not available with Protection UL-G) Under this test, the Policy Value may not any time exceed the net single premium. The net single premium is the one payment that would be needed on a specific date to provide the Death Benefit under the policy.
Note: Elected test cannot be changed after the policy is issued. You may request an Illustration on both tests before making your election.

b) Death Benefit Option    ☑ Option 1/Option A (Face Amount/BSI)    ☐ Option 2/Option B (Face Amount/BSI plus Policy/Account Value)
c) Additional Benefits
☐ Accidental Death Benefit    $    ☐ Enhanced Cash Value Rider
☐ Disability Waiver of Monthly Charges/    ☐ Living Care Rider/Accelerated Death Benefit (for terminal illness)
Total Disability Waiver of Monthly Deductions

© 2005 John Hancock Life Insurance Company of New York, Valhalla, NY. All rights reserved.
NB5007NY (02/2005)    Page 1 of 3

*John Hancock.*

**Mailing Address:**
John Hancock New York
New Business Service Center
PO Box 4608
Niagara Square Station
Buffalo NY 14240-4608

**Courier Address:**
John Hancock New York
New Business Service Center
200 Bloor Street East
Toronto ON
Canada M4W 1E5

## Policy Details - Universal Life
☐ John Hancock Life Insurance Company of New York
☐ John Hancock Life Insurance Company
(hereinafter referred to as The Company)
• This form is part of the Application for Life Insurance for the Proposed Life Insured(s).
• Print and use black ink. Any changes must be initialed by the Proposed Life Insured(s) and/or Owner(s).

| Proposed Life Insured (Life One) | Proposed Life Insured (Life Two) |
|---|---|
| Name   First   Middle   Last | Name   First   Middle   Last |
| **Edith**        **Goldstein** | |

Name(s) of Owner(s)   *The Goldstein Family Irrevocable Life Insurance Trust Karl Weinstock trustee*

### Plan Name

**Single Life**
☐ UL-G          ☐ Performance UL          ☐ Performance UL Core          ☑ Protection UL
☐ Protection UL-G   ☐ Performance Executive Universal Life   ☐ Other

**Survivorship Life**   ☐ Survivorship UL-G   ☐ Performance SUL          ☐ Other

### Amount

1. Face Amount/Base Sum Insured (BSI) excluding any additional benefits   $ **10,000,000.**

### Premiums

2. a) Frequency:   ☑ Annual   ☐ Semi-Annual   ☐ Quarterly   ☐ Monthly – Billed (UL-G and SUL-G only)   ☐ List Billed
   ☐ Pre-Authorized Checking (Complete "Request for Pre-Authorized Checking" – page 6 of the Application for Life Insurance)
   ☐ Monthly – EC/List Bill (Case No. _____) - (Existing Plan only) for Performance UL Core or Protection UL
   ☐ Other

### Premium Notices and Correspondence

3. a) Send Premium Notices to:   ☑ Owner(s)   ☐ Life One   ☐ Life Two   ☐ Employer's Address
   b) Send Correspondence to:   ☑ Same as Premium Notices (as above)
   ☐ Other: Name & Address   Name _____
   Street No. & Name, Apt No., City, State, Zip code

   c) Secondary Addressee - You can make the designation below when you or the Life Insured become a senior citizen (age 65 or older). The Company
   will also mail lapse notices for overdue premiums to any Secondary Addressee you designate. If you want this option, provide the following information.
   Owner – Date of Birth   mmm   dd   yyyy   Name of Secondary Addressee
   Street No. & Name, Apt No., City, State, Zip code

### UNIVERSAL LIFE - SINGLE LIFE

4. a) Life Insurance Qualification Test
   ☐ Guideline Premium (Not available with Protection UL and Protection UL-G) Under this test, the sum of premiums paid into the policy may not at any
   time exceed the greater of (a) the Guideline Single premium, or (b) the sum of the Guideline Level Premiums to such date.
   ☑ Cash Value Accumulation (Not available with Protection UL-G) Under this test, the Policy Value may not any time exceed the net single premium.
   The net single premium is the one payment that would be needed on a specific date to provide the Death Benefit under the policy.
   Note:  Elected test cannot be changed after the policy is issued.  You may request an illustration on both tests before making your election.
   b) Death Benefit Option   ☑ Option 1/Option A (Face Amount/BSI)   ☐ Option 2/Option B (Face Amount/BSI plus Policy/Account Value)
   c) Additional Benefits
   ☐ Accidental Death Benefit   $ _____   ☐ Enhanced Cash Value Rider
   ☐ Disability Waiver of Monthly Charges/   ☐ Living Care Rider/Accelerated Death Benefit (for terminal illness)
   Total Disability Waiver of Monthly Deductions

© 2005 John Hancock Life Insurance Company of New York, Valhalla, NY. All rights reserved
NB5007NY (02/2005)                                   Page 1 of 3

**UNIVERSAL LIFE - SINGLE LIFE - continued**

**UL-G and Protection UL-G**

The Policy Protection Rider (PPR) is automatically included unless this option is selected.
☐ Policy Protection Rider (Enhanced Option)

☐ Other _____

☐ Extended No-Lapse Guarantee:
   ☐ To Age _____   ☐ Period _____

Loan Interest Rate ☒ Fixed  (UL-G only)
                   ☒ Variable (Protection UL-G only)

**Performance UL, Performance UL Core, Protection UL & Performance Executive UL**

☐ Additional Sum Insured (ASI) (Check only one, if desired.)
   Not available with Protection UL.

☐ Level ASI of  $ _____  for life of the policy

☐ Level ASI of  $ _____  with Total Sum Insured increasing

   by:  ___ % or $ ___  per year for  ___ policy years (level thereafter)

☐ Customize Level or Increasing Schedule
   (List by policy year. ASI amount may not decrease. Attach list.)

☐ Premium Cost Recovery:  ☐ Recovery increase percentage ___ %

   ☐ Recovery increase years (level thereafter)

☐ Children's Insurance  $ _____

   (Please complete form NB5020NY.)

☐ Disability Payment of Specified Premium:
   Monthly Specified Premium Amount
                                    $ _____

☐ Other _____

**UNIVERSAL LIFE - SURVIVORSHIP LIFE**

5.  a) Life Insurance Qualification Test

☐ Guideline Premium Under this test, the sum of premiums paid into the policy may not at any time exceed the greater of (a) the Guideline Single premium, or (b) the sum of the Guideline Level Premiums to such date.

☐ Cash Value Accumulation (Not available with SUL-G) Under this test, the Policy Value may not any time exceed the net single premium. The net single premium is the one payment that would be needed on a specific date to provide the Death Benefit under the policy.

Note:  Elected test cannot be changed after the policy is issued.  You may request an Illustration on both tests before making your election.

b) Death Benefit Option      ☐ Option 1/Option A (Face Amount/BSI)      ☐ Option 2/Option B (Face Amount/BSI plus Policy/Account Value)

c) Additional Benefits

**Survivorship UL-G**

The Policy Protection Rider (PPR) is automatically included    ☐ Policy Protection Rider (Enhanced Option)    ☐ Policy Protection Rider - CVA
unless one of the following PPR options is selected:    ☐ Policy Protection Rider - CVA                                              (Enhanced Option)

☐ Return of Premium Death Benefit (with DB Option 1 only)    ☐ Cash Value Enhancement (CVE)    ☐ Other _____

   Increase Rate   ☐ Yes ___ %  ☐ No      ☐ Four Year Term (EPR)

   Percentage of Premiums to be returned at death    ☐ Policy Split Option
   (Whole numbers only. Maximum 100%)  ___ %

Loan Interest Rate   ☒ Fixed

**Performance SUL**

☐ Enhanced Cash Value Rider

☐ Survivorship Four Year Level Term Rider

☐ Policy Split Option

☐ Other _____

☐ Additional Sum Insured (ASI) (Check only one, if desired.)

☐ Level ASI of  $ _____  for life of the policy

☐ Level ASI of  $ _____  with Total Sum Insured (TSI) increasing

   by:  ___ % or $ ___  per year for  ___ policy years (level thereafter)

☐ Customize Level or Increasing Schedule
   (List by policy year. ASI amount may not decrease. Attach list.)

☐ Premium Cost Recovery:  ☐ Recovery increase percentage ___ %

   ☐ Recovery increase years (level thereafter)

© 2005 John Hancock Life Insurance Company of New York, Valhalla, NY  All rights reserved
NB5007NY (02/2005)                    Page 2 of 3

## Additional Information

6.  a)  If an additional or optional policy is being applied for in a separate application, state plan and amount.

    Plan name _____   $ _____

    b)  Do you understand that you may need to pay premiums in addition to Planned Premium if the current policy charges or actual interest credited are different from the assumptions used in your illustration (assuming the requirements of any applicable guaranteed death benefit feature have not been satisfied)?    ☐ Yes   ☐ No

## Signatures

| Signed at | City | _Monroe_ | State | _NY_ | This | _28_ | Day of | _November_ | Year | _2005_ |

Signature of Agent/Registered Representative (as Witness)

X _____

Signature of Proposed Life Insured One (Parent or Guardian, if under age 14 years and 6 months)

X _Gidith G. Goldstein_

Signature of Proposed Life Insured Two (Parent or Guardian, if under age 14 years and 6 months)

X _____

| Signed at | City | _Monroe_ | State | _NY_ | This | _28_ | Day of | _November_ | Year | _2005_ |

Signature of Agent/Registered Representative (as Witness)

X _____

Signature of Owner, if other than a Proposed Life Insured
(Signing Officer please provide title or corporate seal)

X _Rosaldenstein_

Signature of Owner, if other than a Proposed Life Insured
(Signing Officer please provide title or corporate seal)

X _____

© 2005 John Hancock Life Insurance Company of New York, Valhalla, NY. All rights reserved.
NB5007-NY (02/2005)

*John Hancock.*

## Medical Exam

☐ John Hancock Life Insurance Company of New York
☐ John Hancock Life Insurance Company
(hereinafter referred to as The Company)

- This form is part of the application for life insurance for the Proposed Life Insured.
- Notice of Disclosure of Information form NB5014NY must be used with this Medical Exam if it is being submitted on its own without the main application.
- Print and use black ink. Any changes must be initialed by the Proposed Life Insured.

**Mailing Address:**
John Hancock New York
New Business Service Center
PO Box 4608
Niagara Square Station
Buffalo NY 14240-4608

**Courier Address:**
John Hancock New York
New Business Service Center
200 Bloor Street East
Toronto ON
Canada M4W 1E5

Policy No. (for Internal Use Only)

### Proposed Life Insured

1.  a) Name   First **Edith**   Middle   Last **Goldstein**

    c) Social Security/Tax ID Number **1,0,5,3,4,2,7,4,6**

    b) Date of Birth   mm **10**   dd **23**   yyyy **1924**

    d) Gender   ☐ Male   ☑ Female

### Smoking Status

2.  Have you ever used tobacco or nicotine products in any form (including cigarettes, cigars, cigarillos, a pipe, chewing tobacco, nicotine patches or gum)?
    ☐ Yes  ☑ No   If Yes, please provide the following details.

| Product | Frequency | Current | Past | Date last used mmm | dd | yyyy |
|---|---|---|---|---|---|---|
| Cigarettes | pack(s) / day | ☐ | ☐ | | | |
| Cigars | x / day | ☐ | ☐ | | | |
| Other: | x / day | ☐ | ☐ | | | |

### Family Questions

3.  Have any of your immediate family members (parents, brothers and sisters) prior to age 65, died of or been diagnosed as having coronary artery disease, stroke or kidney disease?   ☐ Yes  ☑ No

4.  Please provide the following details

| Family History (LIVING) | Age | Give Details of Present State of Health | Family History (DECEASED) | Age | Cause of Death |
|---|---|---|---|---|---|
| Father | | | Father | 42 | Holocaust |
| Mother | | | Mother | | |
| Brothers and Sisters | | | Brothers and Sisters | 84 | |

67932034

5.  a) Name and Address of Personal or Attending Doctor   First **Dr. Katz @ Ezras Cholim**   Middle   Last

    Street No. & Name, Suite No., City, State, Zip code   **49 Forest Dr. Monroe, NY 10950**

    b) Telephone No. (    )

    c) Date last consulted   mm **8**   dd   yyyy **2005**   Reason for consultation **2 wks ago for rash on hands**   Diagnosis/Result of visit **Use OTC cold cream**

    d) List any medications (prescription or nonprescription) you are taking currently **Paxil 12.5mg QOD**

### Health Questions - Please complete Details on page 2 for Yes answers.

6.  As far as you know, within the last 10 years have you had or been told by a member of the medical profession that you had:

    a) Chest pain, shortness of breath, heart murmur, high blood pressure, stroke, irregular heart beat, or any other disease or disorder of the heart or arteries?   ☐ Yes  ☑ No

    b) Diabetes, elevated blood sugar or glucose intolerance or disease of any glands?   ☐ Yes  ☑ No

    c) Mental or emotional disorder, nervous breakdown, convulsions, epilepsy, paralysis or any other disorder of the brain or nervous system?   ☑ Yes  ☐ No

    d) Arthritis, gout, or any bone, joint, muscle or skin disorder?   ☐ Yes  ☑ No

    e) Asthma, bronchitis, pneumonia, emphysema or any lung disorder?   ☐ Yes  ☑ No

© 2005 John Hancock Life Insurance Company of New York, Valhalla, NY. All rights reserved.
NB5033NY (04/2005)   Page 1 of 4

**Health Questions (continued) - Please complete Details below for Yes answers.**

6. As far as you know, within the last 10 years have you had or been told by a member of the medical profession that you had:
   f) Cirrhosis, hepatitis, ulcer, colitis, diverticulitis, ileitis, or other disease of the liver, gall bladder, pancreas, stomach or intestines?    ☐ Yes ☑ No
   g) Prostate or testicular disease, disease of the uterus, cervix, ovaries or breasts?    ☐ Yes ☑ No
   h) Anemia, leukemia, clotting disorders, platelet disorders, infections, or sources of blood loss?    ☐ Yes ☑ No
   i) Disorder of the urinary tract or kidneys, sugar, albumin or blood in the urine?    ☐ Yes ☑ No
   j) Cancer or tumors?    ☐ Yes ☐ No
   k) An operation or admission to a hospital or any other health care facility, for observation, treatment of any illness or diagnostic tests (except for HIV or AIDS), including treadmill stress test for insurance?    ☑ Yes ☐ No
   l) Any other health impairment or medically treated condition?    ☐ Yes ☑ No

7. Within the last 10 years have you:
   a) used amphetamines, barbiturates, cannabis (marijuana), cocaine, hallucinogens, opiates or any prescription drug except in accordance with physician's instructions?    ☐ Yes ☑ No
   b) been advised to limit or discontinue the use of alcohol or drugs, sought or received treatment, counseling or participated in a group for alcohol or drug use?    ☐ Yes ☑ No

8. Do you currently
   a) use alcoholic beverages?    ☐ Yes ☑ No
   If **Yes**, describe beverages, frequency and quantity

| Beverages | Frequency | Quantity |
|---|---|---|
| | | |

   If **No**, have you ever used alcoholic beverages?    ☐ Yes ☑ No
   If **Yes**, please provide date and reason stopped

| mmm | dd | yyyy | Reason stopped |
|---|---|---|---|
| | | | |

   b) have any symptoms or medical concerns which you have not consulted a member of the medical profession or any consultation, testing (except for HIV or AIDS) or investigation recommended by a doctor which has not yet been completed?    ☐ Yes ☑ No

9. Within the last 10 years have you been diagnosed by a member of the medical profession as having Acquired Immune Deficiency Syndrome (AIDS)?    ☐ Yes ☑ No

**Details for Yes answers to Health Questions - If more space is required, use the Medical Questions Continuation Sheet, NB5034NY.**

| Question No. | Date (mm dd yyyy) | Reason and treatment given | Duration of Condition | Name, Address and Telephone Number of Attending Doctor and Hospital |
|---|---|---|---|---|
| 6c | | Reactive depression to husband's death >2yrs ago. Doing well now + weaning off medication | | |
| 6K | 1998 | Admission to hospital for fractured @ ankle - had ORIF | | |

I, the Proposed Life Insured, authorize:
1. John Hancock Life Insurance Company of New York or John Hancock Life Insurance Company (The Company), to obtain an investigative consumer report on me.
2. Any physician, medical care provider, hospital, clinic, laboratory, insurance company, the Medical Information Bureau (MIB Inc.), or any other similar person or organization to give The Company and its reinsurers information about me or any minor child who is to be insured.
The information collected by The Company may relate to the symptoms, examination, diagnosis, treatment or prognosis of any physical or mental condition. In turn, The Company is free to disclose such information and any information developed during its evaluation of my application to: (a) its reinsurers; b) the MIB Inc.; (c) other insurance companies as designated by me; (d) me; (e) any physician designated by me; or (f) any person or entity entitled to receive such information by law or as I may further consent.
I acknowledge receipt of the Notice of Disclosure of Information relating to the underwriting process, investigative consumer reports and the MIB Inc. This authorization will be valid for two years from the date shown.   A photocopy of this authorization will be as valid as the original.
Information collected under this authorization will be used by The Company to evaluate my application for insurance, to evaluate a claim for benefits, or for reinsurance or other insurance purposes.
I am entitled, or my authorized representative is entitled, to a copy of this authorization.

**Signatures**

I have read the statements and answers in this form and they are complete and true to the best of my knowledge and belief. I hereby agree that they shall form part of the application for life insurance for which this medical information was required by The Company.

Signed at City _Brooklyn_   State _NY_   This _16_   Day of _August_   Year _2005_

Consent for Juvenile Insurance of Parent or Guardian, if other than Owner
X _____

Signature of Proposed Life Insured (Parent or Guardian, if under age 14 years and 6 months)
(X) _Edith Golden_

☐ Father ☐ Mother ☐ Guardian
I certify that I have truly and accurately recorded on this form the information supplied by the Proposed Life Insured.

Signature of Examiner
X _____ MD

Name of Agent _Isaac Ritelbaum_      Agent's Code

© 2005 John Hancock Life Insurance Company of New York, Valhalla, NY. All rights reserved.
NB5033NY (04/2005)        Page 2 of 4

**RABBINICAL COURT
MONSEY, NEW YORK**

KOLEL BETH YECHIEL MECHIL
OF TARTIKOV, INC.,

Plaintiffs,

YLL IRREVOCABL TRUST ("YLL"),
MERIDIAN TRUST COMPANY, as
Trustee of YLL Irrevocable Trust, and
KOCHAV S.A.R.L.,

Defendants

**FIRST PRELIMINARY
DECISION, RULING AND
AWARD OF THE
RABBINICAL COURT**

Kochav S.A.R.L. ("Kochav"), together with the YLL Irrevocable Trust ("YLL") and Meridian Trust Company ("Meridian") – collectively referred to as the "YLL Parties," on the one hand – and Kolel Beth Yechiel Mechil ("Kolel") on the other hand have, irrevocably and unconditionally submitted all disputes, including all claims, counterclaims and cross-claims among them to binding arbitration (the "Arbitration") by an arbitration panel comprised of Rabbi Alexander Grausz, Rabbi Moshe Bergman and Rabbi Shlomo Zalman Kaufman (the "Rabbinical Court").

That agreement speaks for itself, but in sum and substance it empowered the Rabbinical Court to rule pursuant to Torah law, compromise, settlement, or any other way they wish to reach a decision, and that the parties shall abide by and perform any such ruling, including any interim or final award rendered by the Rabbinical Court, and have additionally warranted and represented to each other and to the Rabbinical Court that each of them fully understands the contract of arbitration, and their rights and obligations incumbent upon each of them. They have been given a full opportunity to review any provision or term by independent counsel, rabbinic guide or other qualified person.

Moreover, the parties, by that agreement, waived personal service of process in connection with such confirmation or enforcement proceedings, provided there is service by certified mail or overnight courier at the last known address with a copy to the counsel for all the parties sent by like means simultaneously. Any ruling or award of the Rabbinical Court, it has been agreed, is enforceable in any court of competent jurisdiction, and the parties have agreed to submit to the

1

jurisdiction of the United States District Court, Southern District of New York (and in the event of a jurisdictional issue, to the courts of the State of New York) with respect to any action or proceeding to confirm or enforce any ruling or award herein, or any matter arising from the contract of arbitration or these proceedings.

The Rabbinical Court, after hearing and examining the claims, counterclaims, responses, evidence, admissions and submissions of the above mentioned parties, and upon completion of eight lengthy hearings during the months of February, March and April of 2012, and in light of the circumstances known to all the parties, and the fact that the Parties are prepared and have willingly agreed to allow the Rabbinical court to issue a ruling regarding ownership of the Policies and for this and other good cause, hereby RULE AS FOLLOWS:

> The forty-three (43) Insurance Policies held by Wilmington Savings Fund Society (WSFS) on behalf of Escrow Agent Rabbi Shlomo Zalman Kaufman shall immediately be transferred to Kolel.

The foregoing award is mandatory but preliminary, and is made without prejudice to such further proceedings as may be held herein. Any question regarding discovery and forensic investigations is reserved for future determination pending further proceedings. The exclusive jurisdiction of the Rabbinical Court over the Arbitration shall and does continue until a final award is issued and all matters have been resolved and adhered to as determined by them. Moreover, the Rabbinical Court reminds all parties to the Arbitration that, pursuant to the agreement among them, all matters pertaining to compliance or clarification of the Rabbinical Court's decisions shall be within the frame work of Halacha (Jewish law) and secular law as set forth in the agreement and should be addressed to the Rabbinical Court in the first instance.

Notwithstanding the foregoing, this First Preliminary Decision, Ruling and Award may be submitted to the above-specified court for confirmation or enforcement as any party deems necessary.

In that there remain other pending issues including, but not limited to, damages, the questions of discovery and forensic investigations, and the reimbursement of expenses and legal fees pursuant to the agreement among the parties, the parties are hereby directed to return to the Rabbinical Court to complete all matters of the litigation as soon as possible, and in any event no later than April 25th, 2012.

Dated: April 10, 2012

HAROLD B. SCHONFELD
Notary Public, State of New York
No. 01SC6081096
Qualified in Kings County
Commission Expires September 30, 20 14

Harold B. Schonfeld
HAROLD B. SCHONFELD
Notary Public, State of New York
No. 01SC6081096
Qualified in Kings County
Commission Expires September 30, 20 14

John Hancock
LIFE INSURANCE

## Statement of Claim for Death Benefit

Telephone Inquiries: 1-800-732-5543

- Complete, sign and return this claim form together with the insurance policy and a certified death certificate, which indicates the cause and nature of death of the insured person.
- Additional requirements may also be requested depending on the circumstances.

You, your and yourself refer to the person(s) (1 trustee(s) or Entity claiming the death benefit, whichever is applicable to the policy(ies).

### Section A - List all policy numbers if you are claiming the death benefit for more than one policy.

Policy Number(s)    | 1 H H L R C S G

### Section B - Tell us about the person insured by the policy(ies).

1. a) Name
   First    Edith
   MI
   Last

b) Address
   Street    14 Bel Air Apt 201, monsey N.Y. 10952
   City/State/Zip

c) Male ☐ Male known as/or Other Name    Edith

d) Date of Death    01 10 2012

e) Place of Death    mt sinai hosp N.Y. 10550

f) Date of Birth    10 28 1934

g) Place of Birth    Goldstein

h) Cause of Death    naturel causes

i) Estate Date Last Received    4 10 6 20 4 9

d) Complaint    Edith

### Section C - Read this section carefully if the named beneficiary(ies) is not alive.

If the deceased former beneficiary(ies) has died, please send us a copy of the beneficiary's death certificate.

j) Occupation    N/A

k) Employee/Dependant Name

l) Employee/Dependant Address    N/A

### Section D - Tell us about the claimant of the death benefit (i.e., individual, company, executor or trustee, whichever is applicable for this policy(ies).

4. a) Name    Universal Settlement Fund Society Esq

c) Street Address    501 Silverside Avenue 11 Plaza Wilmington De 19809

b) Gender ☐ Male ☐ Female

d) Mailing Address (if different than Street Address)    Same Address

e) Date of Birth

f) Tel No.    302-388-7437

g) Relationship to Insured    Business

h) E-mail Address

i) Fax No.    302-421-9737

j) Best time to Call    9-5 EST

### Section D - Tell us about the claimant of the death benefit proceeds (i.e., individual, company, executor or trustee, whichever is applicable

4. b) In what capacity are you claiming the death benefit?
   ☐ Executor or Administrator - Please send a court certificate of appointment.
   ☐ Legal Guardian - Please send a court certificate of appointment.
   ☐ Named Beneficiary - Please complete one form for each named beneficiary.
   ☐ Trustee
   ☒ Other (specify)    Securities Intermediary

(If the space provided, please include copy of divorce settlement.)

### 5. Generation Skipping Transfer Tax - Are the death benefit proceeds subject to the Generation Skipping Transfer Tax?    ☐ Yes ☐ No
If you answered Yes above, and the proceeds are greater than $250,000, please submit a Schedule R of IRS Form 706.

### Section E - Additional Information

6. Complete if any family member are named under the insurance being claimed.
   Please list the names and birth dates of all children born of the marriage of the insured and the insured's Spouse, or all children acquired by the insured as stepchildren or legally adopted children. Please list only living children who have not reached their 25th birthday.

| Full Name of Child/Spouse | Relationship to Insured | Social Security Number | Sex | Birthdate (MM/DD/YY) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Is there any possibility of a posthumous child (a child born after the death of the insured)?    ☐ Yes ☐ No

### Section F - Read this section carefully and complete it ONLY if you are a trustee claiming the proceeds of this policy(ies).

7. a) Name of Trust

b) Date of Trust

c) Name of Trustee(s)    If more than one trustee, all trustees must complete and sign this form.

### Certification

If you have completed this section, you are making the following commitments when you sign this form.

- You certify that you are the trustee(s) of the trust named above.
- You certify that you have the right under the trust to act as the claimant for the policy(ies) named in this form.
- You agree that John Hancock doesn't have to determine the original terms of the trust or any revision to them. You also agree that John Hancock shall not be charged with any knowledge of the trust provisions. You confirm and affirm John Hancock or its representatives are responsible for inquiring into or shall be charged with the knowledge of the terms of the trust.
- You agree that John Hancock may discharge its obligations under the policies named in this form by relying solely on the signature of the trustee(s).
- You agree that payment to the trustee(s) of the death claim proceeds will be final and conclusive evidence that payment was made and that all claims and demands of the trustee(s) against John Hancock will have been satisfied.

### Section G - Statement of Lost or Destroyed Policy

Check this box if the policy is lost or destroyed.
☐ The undersigned hereby represents that the above numbered policy was lost or destroyed. This policy is not now assigned, nor has it been otherwise pledged or encumbered in any manner. No person, firm or corporation has a claim to the right to possession of the policy.

GN0198/IF (01/08)
Insurance products are issued by John Hancock Life Insurance Company (U.S.A.) and licensed in New York, Boston, MA 02116; and John Hancock Life & Health Insurance Company.    Page 1 of 4

GN0198/IF (01/08)
Insurance products are issued by John Hancock Life Insurance Company (U.S.A.) and licensed in New York, Boston, MA 02116; and John Hancock Life & Health Insurance Company.    Page 1 of 4

**Section J** – All individual claimants or trustees must sign here and have their signatures witnessed by a disinterested third party.

Any person who knowingly and with intent to defraud any insurance company or other person, files a statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, is subject to criminal prosecution and/or civil penalties. By signing below, you agree under penalties of perjury that the information in this statement is complete and true to the best of your knowledge (please sign as you would sign a check). Refer to "Fraud Warning Notices" listed for your state.

| Signed at | | This | Day of | Year |
|---|---|---|---|---|
| x | | | | |

Signature of Claimant #1

| x | x |
|---|---|

Signature of Claimant #2     Signature of Witness

| x | x |
|---|---|

Signature of Claimant #3     Signature of Witness

**Section K** – Signatures – All Corporate claimants must sign here and have their signature witnessed by a disinterested third party.

Any person who knowingly and with intent to defraud any insurance company or other person, files a statement of claim containing any materially false information, or conceals for the purpose of misleading, information concerning any fact material thereto, commits a fraudulent insurance act, which is a crime, is subject to criminal prosecution and/or civil penalties. By signing below, you agree under penalties of perjury that the information in this statement is complete and true to the best of your knowledge (please sign as you would sign a check). Refer to "Fraud Warning Notices" listed for your state.

Corporation making a claim must provide either:  • The title and signature of one signing officer along with the corporate seal, or
 • Signatures of two signing officers with their titles and the Corporation items.

| Signed at | | This | Day of | Year |
|---|---|---|---|---|
| Wilmington  Delaware | | 12 | February | 2013 |

Signature of the First Signing Officer     Signature of Witness

x *Jeff Everhart*

Name and Title of the First Signing Officer and the Name of Corporation:
Jeffrey R. Everhart, AVP  Wilmington Savings Fund Society, FSB

| x | x |
|---|---|

Signature of the Second Signing Officer     Signature of Witness

Name and Title of the Second Signing Officer and the Name of Corporation

By providing this form or other claim forms for the convenience of the claimant, John Hancock does not admit any liability or waive any of its rights.

# GUSRAE KAPLAN NUSBAUM PLLC

### ATTORNEYS AT LAW
### 120 WALL STREET
### NEW YORK, NEW YORK 10005

MELVYN J. FALIS, P.C.
DAVID A. GEHN
MARTIN H. KAPLAN
MARLEN KRUZHKOV**
LAWRENCE G. NUSBAUM
MARTIN P. RUSSO

TEL: (212) 269-1400
FAX: (212) 809-5449
www.gkblaw.com

BOCA CORPORATE CENTER
2101 NW CORPORATE BLVD., STE 218
BOCA RATON, FLORIDA 33431
TEL: (561) 910-5650
FAX: (561) 910 5652

OF COUNSEL:
ROBERT L. BLESSEY
CIRINO M. BRUNO
BERT L. GUSRAE
HOWARD B. SIROTA

January 14, 2013

COUNSEL
BRIAN D. GRAIFMAN (X 627)

* MEMBER NY AND FLA BAR
** MEMBER NY AND NJ BAR

## FOR IMMEDIATE ACTION
### *Via Fax 617-572-1571 & Federal Express Priority*
John Hancock
197 Clarenton Street
Boston MA 02116

Attn:   Greg King or Paul Gallagher

Re:   <u>Policy Holder</u>         <u>Policy No.</u>
                                      **1418846**
                                      1417299
                                      1421759
                                      93842961
                                      59594044
                                      59685859
                                      59683953
                                      59683052
                                      1203689
                                      1418673
                                      1418684
                                      1418685
                                      1419840
                                      1419841
                                      1210647
                                      93856649

Dear Sirs:

   We are counsel for YLL Irrevocable Trust and Kochav S.A.R.L., a Luxembourg S.A.R.L. and write to follow up on our letters of November 19, 2012, and January 9, 2013 (misdated January 13, 2013) (both attached), where we requested that you immediately put a hold on the above-referenced life insurance policies (issued by or on behalf of your company).

GUSRAE KAPLAN NUSBAUM PLLC
John Hancock
January 14, 2013
Page -2-

We are now informed that one of the above-referenced insureds, Edith Goldstein, passed away this past week. We write to confirm that there is ongoing litigation, and request that you refrain from paying any death benefits until the disputes are fully and finally resolved.

As noted in our prior letters, these policies were sold by Kolel Beth Yechiel Mechil of Tartikov Inc. ("Kolel") to our clients, and have been held by Wilmington Savings Fund Society, FSB, for the benefit of our clients. Thereafter, the ownership of the policies was disputed by the parties, and there is ongoing litigation, including an arbitration to finally resolve ownership. The arbitrators have issued an "interim" award, but no final award has issued. In addition, the "interim" arbitration award has been challenged in litigation, and that litigation is still proceeding, *Kolel Beth Yechiel Mechil of Tartikov Inc. v. YLL Irrevocable Trust*, No. 11 Civ. 7707 (U.S. District Court, Southern District of New York), including a pending appeal at the U.S. Court of Appeals for the Second Circuit (Docket No. 12-3247-cv).

In short, a restriction on these policies should remain in place until all litigation has been fully and finally disposed. Please confirm that John Hancock has received this notice and will maintain the status quo by holding the proceeds of any of the matured policies in escrow. Additionally, I ask that someone from your department contact me by telephone (212-269-1400 x627), or in my absence, Martin Russo of this firm.

We will continue to keep you apprised of any significant developments regarding this matter. Thank you in advance for your anticipated cooperation, and please contact us if you have any questions.

Very truly yours,

Brian D. Graifman

Encls.

Cc:   Martin P. Russo, Esq.